UNION GUARDIAN TRUST COMPANY, A MICHIGAN CORPORATION, AS ADMINISTRATOR WITH WILL ANNEXED OF THE ESTATE OF CARL H. L. FLINTERMANN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75516.    Promulgated July 19, 1935.

*Llewellyn A. Luce, Esq.*, for the petitioner.

*Harry F. Morton, Esq.*, and *Charles P. Reilly, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $30,-434.13 in estate tax. The issue is whether or not the Commissioner erred in disallowing $308,860.39 of a deduction claimed on account of debts of the decedent. The petitioner also raises an alternative issue as to $156,740.78 of the above amount. The facts have been stipulated.

The decedent, Carl H. L. Flintermann, died on January 18, 1931, a resident of Oakland County, Michigan. His gross estate consisted of the following:

1. Assets as inventoried in the Probate Court of Oakland County, Michigan, at values determined by the Commissioner (hereinafter referred to as probate court assets) _____ $157,527.85
2. Property held jointly as valued by the Commissioner _____ 32,197.29
3. Life insurance (in excess of $40,000) on life of decedent, all payable to beneficiaries other than the estate of the decedent __ 1,250,458.74

    Total value of the gross estate_____ 1,440,183.88

The parties agree that the value of the gross estate should be reduced by the following items:

Specific exemption _____ $100,000.00
Funeral expenses, administration expenses, unpaid mortgages, and support of dependents totaling_____ 74,183.40
Debts of decedent allowed by Commissioner_____ 479,044.90

                                      553,228.30

" The actual debts of the decedent aggregate the sum of $787,905.29." A list of the " actual " debts was made a part of the stipulation. "All of said debts were incurred or contracted *bona fide* and for an adequate and full consideration in money or money's worth."

Debts of the decedent amounting to $365,205.95 were paid, pursuant to agreements made by the decedent during his lifetime, from proceeds of life insurance included in the gross estate. A preferred debt of $6,243.12 was paid from the probate court assets.

The Commissioner allowed deductions for the debts paid pursuant to the decedent's agreement from insurance proceeds, for the preferred debt of $6,243.12, and for the other debts to the extent of the excess of the value of the probate assets over the deduction allowed for funeral expenses, administration expenses, unpaid mortgages, and support of dependents. The total amount of the debts of the decedent exceeded the amount thus allowed as a deduction by $308,860.39.

The widow of the decedent voluntarily paid, from proceeds of insurance included in the gross estate, debts of the decedent amount-

ing to $156,740.78. The remaining debts, amounting to $259,715.44, are unpaid and the only resources available for payment of those debts under the laws of Michigan are the probate court assets.

The petitioner, citing no case precisely in point, says that the question involved herein has never been decided by the Board or any court. See, however, *Commissioner* v. *Strauss*, 77 Fed. (2d) 401. The respondent cites no case whatever, but insists that he has correctly computed the deduction in question. The contention of the petitioner is that all of the debts of the decedent are deductible, regardless of whether or not they have been or ever will be paid, and, therefore, the deduction should be $787,905.29, instead of $479,044.90, as allowed by the Commissioner. As an alternative, it contends that a deduction should be allowed at least for the debts actually paid by the widow out of insurance proceeds included in the gross estate.

Congress, in the Revenue Act of 1926, imposed a tax upon the transfer of the net estate of every decedent dying after the enactment of that act. Section 301 (a). It specified, in section 302, how the value of the gross estate should be determined and, in section 303, how the value of the net estate should be determined. The deduction involved herein is claimed under section 303 (a) (1),[1] which provides that there shall be deducted from the value of the gross estate such amounts for claims against the estate, to the extent that such claims were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth, as are allowed by the laws of the jurisdiction under which the estate is being administered. The parties argue about the meaning of the words " as are allowed by the laws of the jurisdiction * * * under which the estate is being administered."

The intent of Congress, as expressed in the words quoted, is reasonably clear and supports the petitioner rather than the Commis-

---

[1] SEC. 303. For the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except in the case of a resident decedent, where such property is not situated in the United States), to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth, losses incurred during the settlement of the estate arising from fires, storms, shipwreck, or other casualty, or from theft, when such losses are not compensated for by insurance or otherwise, and such amounts reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or any estate, succession, legacy, or inheritance taxes.

sioner. The latter argues that the deduction allowed for debts of a decedent is limited to that portion of the debts which is equal to the value at death of that part of the gross estate from which payment of the debts could be lawfully enforced. However, although the statute contains certain express limitations, it contains no limitation of the kind contended for by the respondent. Therefore Congress probably intended no such limitation. Cf. *Jeptha H. Wade, Jr., et al., Executors*, 21 B. T. A. 339. Congress did not say " paid from the gross estate " (cf. *Buck* v. *Helvering*, 73 Fed. (2d) 760), nor did it say " allowed by a court " (cf. *James D. Bronson et al., Trustees*, 7 B. T. A. 127; affd., 32 Fed. (2d) 112) ; and *Commissioner* v. *Strauss, supra.* A claim against the estate of a decedent is " allowed by the laws of the jurisdiction  *  *  *  under which the estate is being administered " if its character is such as to entitle it to recognition in the settlement of the estate as an actual valid claim, payable, along with others of the same class, to the extent of the available assets. Cf. *Estate of Andrew A. Kroeg*, 2 B. T. A. 722. The right to payment is what determines the question. If the claimant has a right to payment before the net estate subject to administration can be distributed pursuant to the will or the laws relating to intestacy, his claim is allowed by the laws. Such claims may exceed the amount of assets available to pay them. The question of payment arises in a probate proceeding after claims allowed by law have been proved to be such. All of the debts involved herein were of such character as to require payment in full had assets been available. Payment of them was authorized by the laws of Michigan. Only an economic law prevents payment in full. Thus the statute contains express authority for the deduction as claimed by the petitioner.

There is no long continued consistent interpretation of similar provisions impliedly approved by repeated reenactments to aid the Commissioner here. His regulations have been changed and the one upon which he particularly relies (Regulations 70, art. 29) does not support his present argument. The latter provides that a claim to be deductible must " be one the payment of which out of the estate is authorized by the laws of the jurisdiction under which the estate is being administered." Payment in this case was authorized by the laws of Michigan though prevented by an inadequacy of funds. Nor is it unreasonable to attribute to Congress an intent to allow deductions under such circumstances as are here present, although good reasons why such deductions ought to be limited to the value of that part of the gross estate from which the claims might be satisfied could be presented to Congress. The primary source for determining the intent of Congress is the words used. Where, as here, the

words are reasonably clear and indicate that Congress meant to make the deductibility of claims against the estate depend upon the right to payment, rather than upon actual payment, or availability of assets to satisfy the claims, resort to other means of statutory interpretation is not justified. *Commissioner* v. *Strauss, supra.*

*Decision will be entered under Rule 50.*