MARY Q. HALLOCK AND CENTRAL UNITED NATIONAL BANK OF CLEVELAND, TRUSTEES, PETITIONERS, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 76802, 76803, 76927. Promulgated May 19, 1936.

*Walker H. Nye, Esq.*, for the petitioners in Docket Nos. 76802 and 76803.

*W. H. Annat, Esq.*, for the petitioner in Docket No. 76927.

*Eugene G. Smith, Esq.*, for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: Mary Q. Hallock, Executrix of the Estate of Henry Hallock, Deceased; S. H. Squire, Superintendent of Banks of the State of Ohio in Charge of the Liquidation of the Union Trust Co., Successor of the First Trust and Savings Co.. Trustee, Cleveland, Ohio.

OPINION.

MELLOTT: The respondent determined a deficiency in estate taxes against the estate of Henry Hallock, in the amount of $6,096.97 under the Revenue Acts of 1926 and 1932. (Docket No. 76803.) A deficiency in the same amount was determined against the petitioners in dockets numbered 76802 and 76927 as transferees. In these proceedings, consolidated for hearing, petitioners seek a redetermination of the deficiencies. All of the facts are stipulated.

Henry Hallock died October 10, 1932, testate. His widow, Mary Q. Hallock, was duly appointed executrix of his estate. She filed an estate tax return showing no tax to be due. Respondent determined that 884 shares of 7 percent preferred stock of the Ohio Rubber Co., valued at $70,720, should have been included in the estate and accordingly he added such amount. He also reduced the deductions on account of debts and charges against the estate from $171,378.17, reported by the executrix, to $114,822.36, on the theory, as stated by him in his notice of deficiency, that "no greater amount may be allowed than the value of the probated estate which is subject to the payment of such items."

The facts with reference to the shares of stock of the Ohio Rubber Co. are as follows. On September 3, 1919, Henry Hallock entered into a separation agreement with his then wife, Anne Lamson Hallock, which provided for the payment to her of $500 per month by way of alimony and for the creation of a trust to produce such sum. On the same day Henry Hallock transferred in trust to the First Trust & Savings Co. of Cleveland, Ohio, 884 shares of 7 percent preferred stock of the Ohio Rubber Co. The dividends of such stock amounted to $6,188 per annum, sufficient to pay the necessary $6,000 per year to the beneficiary and leave $188 per year for the expenses and compensation of the trustee. The Union Trust Co. was the successor in trust of the First Trust & Savings Co., and it is now in liquidation by S. H. Squire, Superintendent of Banks of the State of Ohio.

Anne Lamson Hallock secured a divorce from Henry Hallock on October 28, 1919. She is still living and has not remarried. The trust agreement contained the following provision with reference to the disposition of the trust estate:

C. If and when Anne Lamson Hallock shall die then and in such event and thereupon the within trust shall terminate and said Trustee shall and will pay Party of the First Part if he then be living any accrued income, then remaining in said trust fund and shall and will deliver forthwith to Party of the First Part, the principal of the said trust fund. If and in the event said Party of the First part shall not be living then and in such event payment and delivery over shall be made to Levitt Hallock and Helen Hallock, respectively son and daughter of the Party of the First Part, share and share alike. If

and in the event either said Levitt Hallock or Helen Hallock shall at such time be dead, the share which would have gone to him or her if living, shall go to the children of such deceased child and if there be no such children living, then *said entire income and principal shall be paid to that child of Henry Hallock then living.*

The respondent concluded that the trust estate amounting to $70,-720 came "within the purview of sections 302 (c) and 302 (d) of the Revenue Act of 1926" and added such amount to the gross estate.

The petitioners in Docket No. 76802 are trustees under an agreement of trust dated September 1, 1925, to whom the decedent had transferred certain policies of life insurance taken out on his own life. No issue is involved herein relative to such transfer, but it is stipulated that the proceeds, or the investment of the proceeds in the hands of the trustee, exceed in amount the deficiency determined by the respondent. Thus, if the deficiency is upheld, such petitioners are liable for the tax as transferees.

Of the several errors assigned in the various petitions the following were relied upon at the hearing and upon brief:

(1) The inclusion as part of the gross estate of the decedent of a trust fund created by a trust agreement made by Henry Hallock on September 3, 1919, valued at $70,720.00 as a transfer to take effect in possession or enjoyment at or after death under Sections 302 (c) and 302 (d) of the Revenue Act of 1926.

(2) The inclusion of the trust estate at its full value, without deducting the value of the life estate or interest in the trust of Anne Lamson Hallock, the life beneficiary of all of the income.

(3) The disallowance as deductions from the gross estate of debts and charges of $56,551.81 on the ground that no greater amount may be allowed as deductions than the value of the probated estate administered by the executrix.

(4) The assessment against the petitioner, as trustee and transferee, of the entire alleged deficiency of Six Thousand Ninety-Six Dollars and Ninety-Seven Cents ($6,096.97).

The respondent relies upon section 302 of the Revenue Act of 1926, and especially subsections (c) and (d).[2]

Subsection (c), *supra*, has been construed by the courts in many cases and it is unnecessary for us to discuss it at any considerable

---

[2] Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. &ast; &ast; &ast;

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. &ast; &ast; &ast;

length. In the recent case of *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39, the Court collates the previous decisions and again enunciates the rule that "The event which gives rise to the tax is the *death* of the decedent, with the resulting *transfer* of his estate either by will or the law relating to intestacy." The tax is laid "upon the theory that such a transfer is in effect testamentary" but if "no interest in the property involved in a given case pass from the 'possession, enjoyment or control of the donor at his death,' there is no interest with respect to which the decedent has created a trust intended to take effect in possession or enjoyment at or after his death." *Helvering* v. *St. Louis Union Trust Co.*, *supra; Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48, and cases cited.

In the instant case it can not be said that the decedent had transferred his property "in contemplation of or intended to take effect in possession or enjoyment at or after his death." He divested himself of all title and ownership in the shares of stock when he conveyed them to the trustee. He retained "no power to resume ownership, possession or enjoyment except upon a contingency in the nature of a condition subsequent, the occurrence of which was entirely fortuitous so far as any control, design or volition on his part was concerned." (*Helvering* v. *St. Louis Union Trust Co.*, *supra.*) The trust instrument provided that "If and when Anne Lamson Hallock shall die * * * the trust shall terminate." She is still alive, and the trust has not yet terminated. The only other provision of the trust instrument providing for the termination of the trust was "by the written assent of [Henry Hallock] and [his former wife] the beneficiary"; but such written assent was never given.

Here, as in the cases cited *supra*, the decedent had no right in the trust estate which was the subject of testamentary disposition. The trust instrument—and not the death or testament of the decedent—disposed of the corpus of the trust property. It directed that in the event of the death of the settlor—decedent—prior to the death of the beneficiary "payment and delivery over [of any accrued income and the principal of the trust fund] shall be made to Levitt Hallock and Helen Hallock, respectively son and daughter of the Party of the First Part, [settlor] share and share alike." By the death of the settlor, who, under the trust instrument had the right to have delivery over of the trust property made to him upon the death of the beneficiary, the son and daughter became vested remaindermen, whereas their interest, prior to the death of their father, had been contingent. But such change is not, in our opinion, the "shifting of an economic benefit of property which is the subject of a death tax." We hold, therefore, that the trust property is not required to be included in the gross estate of the decedent under section 302 (c), *supra.*

Is section 302 (d) applicable? The trust instrument provides that the "trust may be terminated, modified, altered, canceled or in any way varied by the written assent of the Party of the first part [settlor-decedent] and beneficiary."

Petitioners concede that, under *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85, inasmuch as the settlor in conjunction with the beneficiary might revoke or terminate the trust, the property conveyed in trust, if such conveyance were made *after* the passage of the act, must needs be included in the estate of the settlor. But is a different rule applicable where, as here, the property was conveyed before the effective date of the act? This question is answered by the Supreme Court in two recent cases—*Helvering* v. *Helmholz*, 296 U. S. 93, affirming the decision of the Court of Appeals for the District of Columbia (75 Fed. (2d) 245) which affirmed the decision of this Board in 28 B. T. A. 165, and *White* v. *Poor*, 296 U. S. 98.

In *Helvering* v. *Helmholz*, *supra*, the Court said:

Another and more serious objection to the application of section 302 (d) in the present instance is its retroactive operation. The transfer was complete at the time of the creation of the trust. There remained no interest in the grantor. She reserved no power in herself alone to revoke, to alter or to amend. Under the revenue act then in force the transfer was not taxable as intended to take effect in possession or in enjoyment at her death. *Reinecke* v. *Northern Trust Company*, 278 U. S. 339. If section 302 (d) of the Act of 1926 could fairly be considered as intended to apply in the instant case its operation would violate the Fifth Amendment. *Nichols* v. *Coolidge*, 274 U. S. 531.

The above language is clearly applicable in its entirety to the facts of the instant case. It follows that we must hold that the trust property is not includable in the gross estate of the decedent under section 302 (d), *supra*. Respondent erred in including said property in the trust estate and his action in doing so is disapproved. Our holding upon this question makes it unnecessary to consider the second assignment of error urged by the petitioners.

There remains for our consideration the assignment of error relating to the disallowance by the respondent of deductions on account of debts and charges against the estate in the amount that such charges exceed "the probated estate which is subject to the payment of such items."

Section 303 of the Revenue Act of 1926, part of which is shown in the margin,[3] authorizes the deduction "to the extent * * * in-

_____

[3] SEC. 303. For the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except, in the case of a resident decedent, where such property is not situated in the United States), to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth.

curred or contracted bona fide and for adequate and full consideration in money or money's worth." It is stipulated that "The debts and deductions of $171,378.17 claimed in the estate tax return filed by petitioners were incurred or contracted bona fide and for an adequate consideration in money or money's worth." The respondent directs our attention to no provision of the act limiting the deductions as he attempts to do in his notice of deficiency. The decisions of the courts and of this Board have uniformly permitted the deductions, on the theory that the statute governs and that the department is without power or authority to make a rule to the contrary. *Union Guardian Trust Co., Administrator*, 32 B. T. A. 996, and *Commissioner v. Strauss*, 77 Fed. (2d) 401. We hold that the respondent erred in reducing the deductions from $171,378.17 to $114,822.36.

The respondent erred in determining the deficiencies and his action in doing so is set aside.

*Judgment will be entered for petitioners.*