**COMMISSIONER OF INTERNAL REVE-
NUE v. HALLOCK et al.
SAME v. HALLOCK.**

**SAME v. SQUIRE, Superintendent of
Banks.**

**Nos. 7666–7668.**

Circuit Court of Appeals, Sixth Circuit.

March 13, 1939.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Walker H. Nye and W. H. Annat, both of Cleveland, Ohio (McKeehan, Merrick, Arter & Stewart, Walker H. Nye, Cannon, Spieth, Taggart, Spring & Annat, and W. H. Annat, all of Cleveland, Ohio, on the brief), for respondents.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

Petitions by the Commissioner of Internal Revenue to review orders of the United States Board of Tax Appeals redetermining and disallowing estate taxes of $6,096.97 against the estate of Henry Hallock, deceased, No. 7667, and disallowing a transferee tax for the same amount of the respondents in Nos. 7666 and 7668 as transferees of the estate. 34 B.T.A. 575.

The questions for decision are (1) whether, under Section 302(c) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 70, as amended, U.S.C.A., Title 26, § 411(c), the value of the remainder interest in a trust estate created by the decedent should be included in his gross estate; (2) whether, under Section 303 of the Revenue Act of 1926 as amended, 47 Stat. 278, 280, U.S.C.A., Title 26, § 412, there may be deducted from the gross estate as deductions, debts of the estate in excess of the value of its assets which are administered by the executrix under the jurisdiction of the Probate Court.

Henry Hallock died October 10, 1932, testate. His widow, Mary Q. Hallock, respondent, was duly appointed and qualified as executrix of his estate and she filed a non-taxable estate tax return.

On September 3, 1919, Henry Hallock entered into a separation agreement with his then wife, Anne Lamson Hallock, whereby he agreed to pay her during her lifetime $500 per month and, to guarantee the payment of this sum, on the same day transferred in trust to the First Trust & Savings Company of Cleveland, Ohio, 884 shares of 7% preferred stock of the Ohio Rubber Company, which was then paying an annual dividend of $6,188. The trustee was to receive $188 annually for its expenses and commissions. The Union Trust Company was later named successor trustee, and is now in liquidation by S. H. Squire, Superintendent of Banks for the State of Ohio, one of the respondents.

Anne Lamson Hallock was divorced on October 28, 1919. She is still living and has not remarried. The trust agreement contained the following provision for termination and disposition of its corpus:

"C. If and when Anne Lamson Hallock shall die, then and in such event and thereupon the within trust shall terminate and said Trustee shall and will pay Party of the First Part if he then be living any accrued income, then remaining in said trust fund and shall and will deliver forthwith to Party of the First Part, the principal of the said trust fund. If and in the event said Party of the First Part shall not be living then and in such event payment and delivery over shall be made to Levitt Hallock and Helen Hallock, respectively, son and daughter of the Party of the First Part, share and share alike. If and in the event either said Levitt Hallock or Helen Hallock shall at such time be dead, the share which would have gone to him or her if living, shall go to the children of such deceased child and if there be no such children living, then said entire

income and principal shall be paid to that child of Henry Hallock then living.

"D. Party of the First Part reserves to himself, his heirs, executors, administrators and assigns the right at his option if and in the event said Anne Lamson Hallock shall marry any other person than said Henry Hallock to pay to said Trustee on or within six months after said marriage the sum of Twenty Thousand Dollars ($20,-000.00) and deliver over to said Trustee evidence that said Anne Lamson Hallock has so remarried. Upon receipt of said fund and said proof by Trustee, if and in the event said proof is satisfactory to Trustee, then 'and in such event Trustee shall deliver the said fund of Twenty Thousand Dollars ($20,000.00) to said Anne Lamson Hallock. This trust shall terminate and the disposition of the then accrued income and trust fund shall be made pursuant to Paragraph C above.

"This trust may be terminated, modified, altered, canceled, or in any way varied by the written consent of the Party of the First Part and beneficiary."

The Commissioner included in decedent's gross estate the stock of the Ohio Rubber Company in the trust and valued it at date of death at $70,720 and found a deficiency in tax of $6,096.97. On the basis of this valuation and the age of Anne Lamson Hallock at the date of decedent's death, he found the fair value of the life estate or her interest in the trust estate to be $25,743.

In the return, deductions of $171,378.17 were claimed and the estate was appraised in the Probate Court of Cuyahoga County, at $114,822.36. The Commissioner reduced deductions $56,555.81, the excess over the valuation of the estate in Probate Court. The gross taxable estate determined by the Commissioner included a life insurance trust created by testator, as well as the trust involved in these proceedings. As thus valued, the gross estate exceeds the total claimed deductions.

On September 1, 1925, the decedent transferred to the respondents, Mary Q. Hallock and Central United National Bank of Cleveland, as trustees under an agreement of trust, insurance policies on his life having an aggregate face value of approximately $200,000. At the time of decedent's death, the net value of this trust was about $110,000 and its proceeds or their investment in the hands of the trustees at

the time the Commissioner determined his deficiency exceeded the amount thereof.

The corpus of the insurance trust passed under contracts executed by the decedent in favor of specific beneficiaries, who are respondents in No. 7666.

The Board of Tax Appeals disallowed the deficiency of the Commissioner as determined on the foregoing facts, hence these proceedings for review.

The petitioner insists that the death of the testator was the generating source of new rights to his children under the trust instrument, because until his death there was no assurance they would at any time come into possession or enjoyment of any portion of the trust estate.

The applicable statute is Section 302(c) of the Revenue of Act of 1926, 44 Stat. 9, 70, 26 U.S.C.A. § 411(c), which provides for the inclusion in a taxable estate of a decedent's property transferred "in contemplation of or intended to take effect in possession or enjoyment at or after his death."

The statute intended to levy a tax on property possessed or enjoyed by the decedent in his lifetime having a clear value in money. It does not cover a mere technical interest without regard to a present right to possess or enjoy or without measurable value at date of death.

In the case of Helvering v. St. Louis Union Trust Company, 296 U.S. 39, 47, 56 S.Ct. 74, 75, 80 L.Ed. 29, 100 A.L.R. 1239, the trust indenture provided that, "if the daughter [the beneficiary] predecease the grantor, the trust shall terminate and the trust estate be transferred, paid over, and delivered to the grantor, to be his absolutely." With reference to the interest of the grantor it was said: "His death passed no interest to any of the beneficiaries of the trust, and enlarged none beyond what was conveyed by the indenture. His death simply put an end to what, at best, was a mere possibility of a reverter by extinguishing it; that is to say, by converting what was merely possible into an utter impossibility." The court further added: "But here the grantor parted with the title and all beneficial interest in the property, retaining no right with respect to it which would pass to any one as a result of his death."

In the case of Becker v. St. Louis Union Trust Company, 296 U.S. 48, 53, 56 S.Ct. 78, 79, 80 L.Ed. 35, the decedent had ex-

ecuted separate declarations of trust in favor of each of his four children. These declarations provided that if the beneficiary should die before the death of the trustor "* * * then this trust estate shall thereupon revert to me and become mine immediately and absolutely, or (b) if I should die before her death, then this property shall thereupon become hers immediately and absolutely and be turned over to her and in either case this trust shall cease." The court said: "The question, therefore, is whether the mere possibility of a reverter stamps the transfer as one intended to take effect in possession or enjoyment at or after the death of the grantor. The decision just rendered [Helvering v. St. Louis Union Trust Company] answers this question in the negative."

The rights of the beneficiaries and distributees under the trust here in question were fixed by its terms and the rights passed from the trustor at the time of the execution of the trust instrument and, while the death of the trustor definitely fixed the right of his children in the trust estate, it was not the generating source of their rights. Tait v. Safe Deposit & Trust Company of Baltimore, 4 Cir., 74 F.2d 851; Commissioner v. Grosse, 9 Cir., 100 F.2d 37.

The petitioner leans heavily on Klein v. United States, 283 U.S. 231, 235, 51 S.Ct. 398, 75 L.Ed. 996, in which case a life estate in land was conveyed to the grantee by deed and provided that upon her death prior to the death of the grantor, the reversion should "remain vested in said grantor * * * such reversion being hereby reserved to said grantor and excepted from this conveyance," but if the grantee should survive the grantor she should have the land in fee simple. This case is easily distinguished from the one at bar. There the effect of the deed was to vest only a life estate in the grantee, the remainder being retained by the grantor so that his death effected a transmission of the larger estate to the grantee.

■ The trust instrument here under consideration contained a condition subsequent. The right of reverter in the grantor was based on the possibility only that he might survive his wife in which event the title would return to him. He had conveyed his whole interest in the estate and had nothing left except a mere possibility of reverter, too intangible for mea-

surement in money, and over which he had no control.

The second issue for consideration is whether the statute permits a deduction from the gross estate, as defined by the Revenue Law, of valid claims which cannot be paid because they exceed the value of the estate as determined in the jurisdiction of administration. In the case here the Commissioner has included in the gross estate, proceeds of certain insurance policies on the life of decedent, not subject to the payment of his debts under local law.

■ Section 301(a), Revenue Act of 1926, 26 U.S.C.A. § 410, provides "a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in Section 303 [26 U.S.C.A. §§ 411 and 412] shall be imposed upon the transfer of the net estate of every decedent." Section 303, as amended, 47 Stat. 280, 26 U.S.C.A. § 412(b), provides in part "for the purpose of the tax the value of the net estate shall be determined * * * (a) In the case of a resident, by deducting from the value of the gross estate—Such amounts—(1) for funeral expenses, (2) for administration expenses, (3) for claims against the estate * * * as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered. * * * The deductions herein allowed in the case of claims against the estate * * * shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth." The statute contains neither patent nor latent ambiguities, and means the same whether read as an excerpt isolated from its context or in pari materia. It is too plain in language to need the aid of contemporaneous administrative construction. Houghton v. Payne, 194 U.S. 88, 104, 24 S.Ct. 590, 48 L.Ed. 888.

■ The application of the estate tax law presents a simple mathematical calculation to reach its end. On one side is valued certain assets specifically enumerated in the statute; on the other, certain statutory defined deductions. The last subtracted from the first constitutes the net estate which is taxed at given percentages. The elements of both sets of factors are specifically enumerated in the Act and to some extent items going into the gross

estate as well as deductions have been arbitrarily chosen by the Congress. The inclusion of insurance in the gross estate is by legislative fiat. The proceeds of such policies are not the property of the deceased and the right to them accrued to individuals named in the policy which right the decedent never possessed. The inclusion by Congress of this class of property as a part of the gross estate of decedent finds its justification in the fact that the income of the decedent paid for the insurance. The taxation of unearned benefits accruing on death is a proper source to which the Government may turn in its need. As a corollary to inclusion of insurance in gross estates, the Congress may have been impelled as a matter of abstract justice to allow the individual beneficiary who is called on to pay the tax to take deductions which may not be basically logical. The fact that the estate may not be called upon to pay the debt is no concern of the courts. The insurance beneficiaries can be called upon to pay the estate tax due the Government if the estate be insolvent. There is no element of unfairness in allowing debts defined in the statute to be deducted in determining the net estate.

The Commissioner contends in effect that Section 303(a) should have read into t a proviso limiting the deductions to claims which are actually possible of payment from the assets of the estate. This would make the section in substance provide that only deductions should be permitted for claims against the estate which constitute legally enforceable demands and which are actually payable from its assets.

To depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret. The responsibility for the justice or wisdom of legislation rests with the Congress. It is the province of the courts to construe, not to make laws. United States v. Detroit First National Bank, 234 U.S. 245, 262, 34 S.Ct. 846, 58 L.Ed. 1298.

The Congress by a simple phrase could have limited deductions from gross estates by excluding such portions as passed unburdened of claims under the laws of the state of domicile. It did not elect to do so, therefore all claims allowable against it by the laws of the jurisdiction where being administered are deductible in determining the net estate. Commissioner v. Windrow, 5 Cir., 89 F.2d

69, 110 A.L.R. 1251; Commissioner v. Ames, 5 Cir., 88 F.2d 338.

The order of the Board is affirmed.