## Kritz Estate

Before Klein, P. J., Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

*Irvin Stander*, Deputy Attorney General, for exceptants.

*Avery D. Andrews, 2nd*, and *H. Ober Hess*, contra.

LEFEVER, J., February 10, 1956.—The narrow issue in this case is whether a debt of a decedent (leaving no testamentary estate), which is paid by the surviving owner of jointly owned nontaxable property, is allowable as a deduction in determining the transfer inheritance tax due upon other property jointly owned by decedent and a third person.

Decedent died on October 30, 1953. She was survived by her husband, Frank J. Kritz, and by her sister, Grace L. McMullin. At the time of her death she and her husband, as tenants by the entireties, owned the real property at 4201 Tyson Street, Philadelphia, which was subject to a joint bond and mortgage, and she and her sister, as joint tenants with right of survivorship, owned a piece of real property in Montgomery County. Decedent owned no other real or personal property. Accordingly, no administration was raised on her estate.

The sister reported for Pennsylvania inheritance tax purposes $8,000 gross, being one half of the appraised value of the Montgomery County property, and claimed a deduction of $538.98, which was one half the amount of the principal and interest due upon the bond and mortgage secured upon the Philadelphia property.[1]

_____

[1] In addition to this debt the sister originally claimed deductions for obligations of decedent's estate which the sister herself paid as follows: Funeral bill, $1,324.29; cemetery lot, $400; decedent's funeral clothing, $47.90; Oncologic Hospital, $240.47; Dr. Hahn, $500, and nursing services, $84. The Commonwealth al-

The sister had no obligation to pay this debt and did not pay any part of it. It has been paid by decedent's husband.

As stated in the Commonwealth's brief:

"The Pennsylvania Inheritance Tax Act is made up of a series of taxable subjects which have been added at various times over the years. The first one covered by the Act was the general estate of the decedent left by Will, the Intestate Laws, or other testamentary device. Another subject of taxation, later added, was transfers, intended to take effect in possession or enjoyment at the time of the decedent's death where the establishment of the gift or transfer is deemed to be testamentary in nature. The next subject added for taxation was transfers made in contemplation of death. . . . The last subject for taxation added by the Legislature is that of jointly-held property. . . ."

The tax is specifically imposed "upon the transfer of any property, real or personal . . .": Act of June 20, 1919, P. L. 521, article I, sec. 1; as amended, 72 PS §2301.

Section 2 of the Transfer Inheritance Tax Act, as amended, 72 PS §2302, provides: "All taxes imposed by this act shall be imposed upon the clear value of the property subject to the tax. . . . In ascertaining the clear value of such estates, the only deductions to be allowed from the gross values of such estate by the Register of Wills shall be the debts of the decedent, reasonable and customary funeral expenses . . .";

lowed all of these additional items (reducing the funeral bill to $1,000) as deductions, in reliance upon the opinion of Deputy Attorney General George W. Keitel, in the Estate of Lawrence Daniel, deceased, issued June 11, 1945, that if decedent leaves no testamentary or administrative estate for payment of administration expenses or debts of last illness and the surviving joint tenant voluntarily makes payment of these items the same shall be allowed as deductions in fixing "the clear value" of jointly held property. This is now apparently accepted practice.

also expenses of care of burial lots, erection or grave-stones, and administration expenses. There is no limitation in the statute on these "deductions".

It is well settled that tax statutes shall be strictly construed. However, in this case, there is no need to resort to rules of construction for the words here used are precise. The statute specifies that, "the only deductions to be allowed from the gross values of such estates by the Register of Wills shall be the debts of decedent . . .". The statute does *not* provide: "debts of the decedent *for which the property subject to tax is liable for payment*". One half of the balance of the principal and interest due on the bond and the mortgage secured upon the entireties' property was a debt of decedent. Therefore, this debt constitutes a deduction within the strict meaning of the language of the statute.

The theory of the Pennsylvania Transfer Inheritance Tax Act, as amended, and the practice which has developed under it is that all of the testamentary and extra-testamentary estate shall be lumped into one gross estate, and all of the deductions shall be subtracted therefrom. The inheritance tax is then assessed upon the net estate. This was the original theory when only the testamentary estate was taxed, and there is nothing in the amendments to indicate that that theory was changed when extra-testamentary property was made subject to tax. It follows, therefore, that the specified deductions are allowable whether the estate consists of testamentary or extra-testamentary property.

It has been urged that "such estates" in the statute apply only to testamentary property and, therefore, the deduction of "debts of the decedent" is not available to taxpayers on extra-testamentary property. But the statute itself refutes this. Section 45, art. V of the Act of June 20, 1919, P. L. 521, 72 PS §2461, provides:

"The words 'estate' and 'property', wherever used in this act, except where the subject or context is repugnant to such construction, shall be construed to mean the interest of the testator, intestate, grantor, bargainer, or vendor, passing or transferred to the individual or specific legatee, devisee, heir, next of kin, grantee, donee, or vendee, not exempt under the provisions of this act, whether such property be situated within or without this Commonwealth."

The situation before the court is unique. There is no reported case exactly on point. The precise situation of a decedent dying without any testamentary estate and a joint owner of two pieces of real property, one held with her husband and the other held with her sister, is not apt to occur very frequently. There is no reason to change the general theory and interpretation of the inheritance tax act for this unusual case. We conclude, therefore, that the debt in question is a proper deduction.

It is urged that the interpretation of the inheritance tax statute herein set forth may lead to a race by recipients of extra-testamentary property for deductions in the estate where no administration is raised. We doubt that this will occur. Such has not been the situation during the many years that the Transfer Inheritance Tax Act has been in existence. If this be so, it is perhaps unfortunate that the legislature repealed the provision in the earlier acts specifying: "That no deductions shall be allowed for any debts of the decedent of which notice is not given to the executor, administrator or the register of wills within one year of the date of the death of the decedent". That provision gave a measure of control to the register and placed a time limit upon claims for deductions. But the legislature has eliminated this time limitation and we must observe the legislative mandate. We shall meet the suggested problems if, as and when they arise.

The conclusion here reached is supported by Kershaw Estate, 352 Pa. 205 (1945). There it was held that one half of the mortgage debt for which decedent and his wife were jointly and severally liable was a proper deduction for inheritance tax purposes, although the mortgaged premises had been owned by them as tenants by the entireties and, therefore, formed no part of the taxable estate. The court stated: "If the collateral securing a debt for which a deduction is claimed is owned by the decedent, it is, of course, included in the appraisement of the gross assets; if for any reason, as in the present case, it is not so owned and therefore not so included, this does not affect the deductibility of the debt in computing the clear value of the property subject to the tax, for the debt, no matter how secured, is nonetheless a debt, and, as such, falls within the express wording of the act".

In Mellor's Estate, 286 Pa. 149 (1926), the court allowed the wife's funeral expenses as a deduction, saying at page 152: "The Commonwealth argues that the husband is primarily liable for his wife's funeral expenses and, this being so, we should read into the act a limitation of deductibility to such expenditures as the wife's estate would be primarily liable for, citing to us such cases as Waesch's Est., 166 Pa. 204, and Mitchell's Est., 79 Pa. Superior Ct. 208, but the legislature in determining what deductions it would allow before assessing the tax said in explicit terms that allowance should be made for 'reasonable and customary funeral expenses' and placed no other limitation thereon. We think this plain language negatives the idea that the deduction was to be made only in the event that the husband is unable to pay."

In Rex's Estate, 46 D. & C. 443, the court allowed as a deduction the entire principal and interest, on the joint and several note of decedent and his wife, secured by stock owned by obligors, as tenants by entireties.

President Judge Holland reasoned, page 445: "The Act of June 20, 1919, P. L. 521, art. 1, sec. 2, as last amended by the Act of June 24, 1939, P. L. 721, sec. 1, 72 PS §2302, provides that the clear value of a decedent's estate subject to inheritance tax shall be ascertained by taking the gross value, and then by deducting therefrom, inter alia, 'the *debts* of the decedent' (italics supplied). The Inheritance Tax Act nowhere, by express words or implication, makes any distinction between secured and unsecured debts. To break down secured debts into sub-classifications, depending upon the nature and ownership of the collateral security, is to take still another step further away from the statute. The one and only way to find the correct answer is by looking at the alleged debt and by determining whether or not it actually is a *debt* of the decedent. Inquiry into the collateral security is wholly immaterial."

It is significant that in the instant case the Commonwealth has allowed decedent's hospital bill, physician's bill and funeral expenses, as deductions against the gross value of taxpayer's real estate (see footnote 1). It may be argued that this is a matter of grace. Nonetheless, the chief law enforcement officer of the Commonwealth has manifested by this action his approval of the practice of allowing deductions against the gross extra-testamentary estate of "funeral expenses" and other debts of decedent paid by the taxpayer. There is no real difference as to this debt which was paid by decedent's husband. The policy and practice has been established.

The Commonwealth relies strongly upon O'Donnell Estate, 85 D. & C. 573 (1953). In that case two sisters owned a joint bank account with right of survivorship and the surviving sister claimed that she was not subject to a tax on one half of the amount of the account because the debts of the deceased sister exceeded

that amount. President Judge Brady refused to allow the debts of the deceased sister as a deduction. We disagree with Judge Brady's conclusion, but concur with him in his statement: "The troublesomeness of this problem is enhanced by the scantiness of appositive authorities. Indeed, diligent canvass of the precedents has failed to yield a precise pattern for this case. In my opinion, this is a matter for the legislature to clarify and establish the rights of creditors in joint tenancy cases and not for me." It should be added that the Transfer Inheritance Tax Act, with its many amendments, badly needs revision and codification. If, as and when this is done, the legislature can make clear whether or not it wishes to change the practice inherent in the act and herein approved. However, the liability of individuals to pay inheritance taxes is peculiarly the province of the legislature, not the judiciary.

The Federal courts are faced with a similar problem under the Federal Estate Tax Law. The Federal courts construed the statute strictly and allowed deductions in an insolvent estate against the tax due on extra-testamentary estates: Commissioner of Internal Revenue v. Hallock et al., 102 F. 2d 1 (C. A. 6th 1939); Helvering v. O'Donnell, 94 F. 2d 852 (C. A. 2d, 1938); Commissioner of Internal Revenue v. Lyne, 90 F. 2d 745 (C. A. 1, 1937); Helvering v. Northwestern Nat. B. & T. Co., etc., 89 F. 2d 553; Commissioner of Internal Revenue v. Windrow, 89 F. 2d 69 (C. A. 5th, 1937); Commissioner of Internal Revenue v. Strauss, 77 F. 2d 401 (C. A. 7th, 1935). We recognize that the Federal Estate Tax Law is founded upon a different theory from the Pennsylvania Transfer Inheritance Tax Act. However, interpretation of all tax statutes is based upon the same fundamental principles. Therefore, we quote in extenso from the compelling language of Circuit Court Judge Hamilton in Commis-

sioner of Internal Revenue v. Hallock et al., supra.

". . . the statute [2] contains neither patent nor latent ambiguities, and means the same whether read as an excerpt isolated from its context or in pari materia. It is too plain in language to need the aid of contemporaneous administrative construction. Houghton v. Payne, 194 U. S. 88, 104, 24 S. Ct. 590, 48 L. Ed. 888.

"The application of the estate tax law presents a simple mathematical calculation to reach its end. On one side is valued certain assets specifically enumerated in the statute; on the other, certain statutory defined deductions. The last subtracted from the first constitutes the net estate which is taxed at given percentages. The elements of both sets of factors are specifically enumerated in the Act and to some extent items going into the gross estate as well as deductions have been arbitrarily chosen by the Congress. . . .

"The Commissioner contends in effect that Section 303(a) should have read into it a proviso limiting the deductions to claims which are actually possible of payment from the assets of the estate. This would make the section in substance provide that only deductions should be permitted for claims against the estate which constitute legally enforceable demands and which are actually payable from its assets. .

"To depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret. The responsibility for the justice or wisdom of legislation rests with the Congress. It is the province of the courts to construe, not to make laws."

The exceptions are dismissed, the appeal is sustained, and the record is remanded to the Register of Wills for disposition in accordance herewith.

·BOLGER, J., dissenting, February 10, 1956.—While the facts of this case are unique, the principle of law

[2] Sections 301(a) and 303 of the Revenue Act of 1926, 26 U. S. C. A. §§410 and 412(b).

which this decision will enunciate will in no sense be sui generis. The decision of the majority will create a precedent which will not only result "in a race for deductions", but in many cases injustice substantively and chaos administratively in this phase of tax legislation. If this taxable be declared entitled to the claimed deduction, other similar nonprobate property in all estates will be entitled to participate in all claimed deductions, even though such property does not come into the hands of the personal representative, and is not amenable to the payment of the debts, funeral and administration expenses, etc., all of which must be paid out of the probate estate. In volume I, Hunter's Orphans' Court Commonplace Book "Inheritance Tax, §6(c), p. 614" are listed some of the other types of similarly taxable property. See Dick's Estate, 273 Pa. 69, 71, involving a tax payable by the trustee of an inter vivos trust; Graham Estate, 358 Pa. 383, defense bonds in joint names; Commonwealth v. Nolan Estate, 345 Pa. 98, joint bank account.

Thus the beneficiaries of probate estates whose shares are liable for the payment of the debts will have to share tax deductions with those who have acquired nonprobate property which is not liable for debts, etc. The injustice to probate beneficiaries as well as to the Commonwealth is apparent. This will create a lack of uniformity which is repugnant to article IX, sec. 1 of the Constitution of Pennsylvania. The unutterable confusion which will result in the attempt to determine the allocation of the deductions and the rate of tax on the net estate is something which the legislature never intended to create nor did it intend to open the door to fraud and collusion between taxpayers, the opportunity for which the majority opinion would encourage.

When one contemplates the problems it will raise not only in the estates of Pennsylvania decedents who

died leaving real and personal property held by various tenancies, encumbered and unencumbered located here or leaving intangible personal property in various other states or foreign countries, as well as in the estates of non-Pennsylvania decedents who die leaving tangibles and real estate located here and subject to Pennsylvania tax, and the many other subjects of taxation, one realizes the extent of the mischief which the majority opinion would visit upon the administration of this act of assembly. The act, as amended, is definitely a hodgepodge. It is not, however, the absurdity which the majority opinion would make of it. It is all very well to state that we shall meet these questions when they arise, but we must answer them now. They are inherent in this case; the ripened seeds are present.

The majority decision is erroneous because it removes the deduction section of the act from its context, and then erroneously applies to it the strict presumption against taxation.

Actually there are three pertinent parts to section 58, art. IV, of the Statutory Construction Act of May 28, 1937, P. L. 1019, supra, upon one of which the hearing judge relied. These three sections are as follows: "All provisions of a law of the classes hereafter enumerated shall be strictly construed: . . . (3) Provisions imposing taxes; . . . (5) Provisions exempting persons and property from taxation; . . . [and] (concluding paragraph). All other provisions of a law shall be liberally construed to effect their objects and to promote justice."

These presumptions no doubt are derived from Justice Simpson's concurring opinion in Callery's Appeal, 272 Pa. 255, 272 (1922) as follows: "In construing statutes relating to taxation, three rules must be steadily borne in mind: (1) No tax can be collected in the absence of a provision clearly imposing it upon the class to

which the taxpayer or his property belongs; (2) Where the taxpayer or his property is within the general language of the statute imposing the tax, all exempting provisions are to be strictly construed against the claim for exemption; (3) Provisions relating either to the imposition of or exemption from a tax, are to be so construed as to give effect, as nearly as reasonably may be, to the common law duty to tax equitably and ratably all those within the given class, this subject being partially dealt with also in article IX, section 1, of our Constitution." This case was cited with approval in Shillington Bank Trustees' Case, 129 Pa. Superior Ct. 316, wherein the court also cited Commonwealth v. Sunbeam Water Co., 284 Pa. 180; Commonwealth v. Stegmaier Brewing Co., 309 Pa. 52; Sellers' Estate, 325 Pa. 377; Tack's Estate, 325 Pa. 545.

The three decisions of the Supreme Court of Pennsylvania cited by the hearing judge sustaining the strict construction in the instant case all deal with taxable property. Neither these nor any other decisions, including Panther Valley Television Co. v. Summit Hill Borough, 376 Pa. 375, and Commonwealth v. Butler County Nat. Bank, 376 Pa. 66, apply the presumption in deduction cases. In Krause's Estate, 325 Pa. 479, 483, the court limits the presumption specifically to the determination of "taxables". Hermann Estate, 349 Pa. 230, applies the presumption against exemptions. Since exemptions in inheritance tax law are on an equality with deductions, we should hold that the presumption against exemptions likewise applies to deductions, and the burden is upon the one claiming the deduction to prove his right to it.[3]

---

[3] See Neller Estate, 356 Pa. 628; Mills' Estate, 367 Pa. 504, 509; Hetrick Estate, 78 D. & C. 52, 55; Ashbridge's Estate, 47 D. & C. 343, 348; Geary Estate, 2 D. & C. 2d 453.

Lancaster City Ordinance Case, 383 Pa. 471, decides that a rule of statutory construction set forth in the Statutory Construction Act is not to be applied where it would result in a construction inconsistent with the manifest intention of the legislature: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 31. The action of the legislature in drawing nonprobate property, by successive amendments to the Act of 1919 into the orbit of taxables was in accordance with modern concepts occasioned by the practice of many owners of property transferring it by various devices prior to death in order to avoid inheritance taxes. In so doing it was the manifest intention of the amendments to retain the benefits of deductions exclusively for probate property which is amenable to the payment of debts and not to require it to share such benefits with nonprobate property which is not amenable to the payment of debts which are the subjects of the deductions. If the legislature had intended to extend the benefit of deductions to nonprobate property, it would have so declared. Were the presumption against the Commonwealth, it might be well contended that the legislature in failing to expressly extend the benefits of the deductions to nonprobate property, intended to include it.

In McClelland v. Pittsburgh et al., 358 Pa. 448, 452 and 453, and in Philadelphia v. Samuels, 338 Pa. 321, 324, the Supreme Court in applying the 1937 Statutory Construction Act, supra, stated: "words in taxing statutes may be and are used in different senses. The object of interpretation and construction is to ascertain and effectuate the intention of the legislature. For this purpose the occasion and necessity for the law, and the object to be attained, must be considered." In Commonwealth v. Budd Realty Corp., 345 Pa. 343, 346, appears the following: "As was said in Commonwealth v. Mortgage Trust Company,

227 Pa. 163, 182: 'It is not so much what the general rule of construction is as what did the legislature intend . . .'."

Section 52, art. IV of the Statutory Construction Act of 1937, supra, reads: "In ascertaining the intention of the legislature in the enactment of a law, the Courts may be guided by the following presumptions among others: (1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable."

This section was applied in Dawkins Unemployment Compensation Case, 358 Pa. 224, where it was held that all laws should receive a sensible construction, that statutes must be construed, if possible, that absurdity and mischief may be avoided. In Indiana Township Lines Alteration Case, 171 Pa. Superior Ct. 642, 647, affirmed 373 Pa. 319, Judge (now Justice) Arnold said:

"In Null v. Staiger, 333 Pa. 370, 375, 4 A. 2d 883, the Supreme Court quoted from Endlich on the Interpretation of Statutes, sec. 258: ' "It is obvious that the administration of justice requires something more than the mere application of the letter of the law, designed for some particular class of ordinary cases, to all others, however modified by accident or withdrawn by extraordinary circumstances from the spirit of its enactment. It follows that 'general terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the Legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter' " '."

The Transfer Inheritance Tax Act of 1919 is divisible into three parts. The first designates the subjects of taxation, the second, the rate of the tax, and the third, deductions. The subjects of taxation may be

classified under two distinct headings. The first is probate property, i.e., property immediately owned and possessed by the testator and the possession of which upon his death passes to his personal representative, devisee or heir and which is liable for the debts, etc., listed in the enumerated items of deduction. This subject is dealt with in Tack's Estate, 325 Pa. 545, wherein Justice (now Chief Justice) Horace Stern stated that in theory the operation of the Pennsylvania inheritance tax is actually a retention by the Commonwealth of a portion of the deceased's property, the rest of which the Commonwealth permits decedent to transfer whether by will or under the Intestate Laws to certain beneficiaries. The second heading may be termed nonprobate, i.e., taxables which do not come into the hands of the personal representative and which are not amenable to the payment of the debts of decedent. This type of taxable, the subject of this case, includes the right of accrual to the survivor upon the death of a joint life tenant, of complete possession, ownership and enjoyment in the subject of the tenancy: Cochrane's Estate, 342 Pa. 108. In this type of taxable it is quite clear that no property passes from decedent because whatever property right he possessed in the taxable asset died with him.

In Cochrane's Estate, supra, where the constitutionality of the pertinent Amendment of July 14, 1936, P. L. 44, was sustained, the court construed several ambiguous sections of the act in deciding: (1) That both the probate and nonprobate property has to be appraised in one appraisement. This does not mean that the nonprobate property comes into the hands of the personal representative, because the latter is only liable for that which passes through his hands; (2) who shall pay the tax depends upon who receives the property; (3) the personal representative pays

the tax only on assets coming into his possession; (4) the Commonwealth must look to the individual who receives nonprobate property for the tax on such property at the rate fixed by the Act. Therefore, in our treatment of the obscurity or ambiguity in the deduction section, we must endeavor to make sense out of the language in order to do justice.

The term "clear value" as employed in the second section of the act was held in Scranton Lackawanna Trust Co., to use, v. Scranton Lackawanna Trust Co. et al., 310 Pa. 125, to mean the equity of redemption in mortgaged real estate, and in Moffett Estate, 369 Pa. 159, to signify "net worth".

When we come, therefore, to the deduction section we observe that it deals with the "clear value" of "such estates". The question then arises whether the phrase "such estates" comprehends the one or both types of taxables. The phrase, therefore, becomes inherently ambiguous. The anomalous result. reached by the majority opinion arises from a refusal to recognize this ambiguity and in concluding that "estate" is synonymous with "property" and "property passing" and, therefore, the deduction section deals with both types of taxables. It is practically common knowledge and, therefore, is properly the subject of judicial notice that the word "estate" in decedent's estates refers to the estate of decedent which comes into the hands of his personal representative and which is amenable to his debts. In the interests of a uniform, sensible and just solution, one that will void the absurdity and unutterable confusion otherwise resulting, I would hold that "estate" must be so construed and that any other connotation must be excluded. This is consistent with section 45, article V of the said Act of 1919 which states:

"The words 'estate' and 'property', wherever used in this act, *except where the subject or context is re-*

*pugnant to such construction,* shall be construed to mean the interest of the testator, intestate, grantor, bargainer, or vendor, passing or transferred to the individual or specific legatee, devisee, heir, next of kin, grantee, donee, or vendee, not exempt under the provisions of this act, whether such property be situated within or without this Commonwealth." (Italics supplied.)

Construction should be derived from the context, not necessarily from the general terminology. The narrow construction herein given to the key phrase, "such estates", is supported by the principle that where a statute amends part of a general code so that its apparent effect is to materially modify, partially destroy or interfere with the general purpose of the code by conflict with other provisions, the amendment should be strictly construed and made to conform to the general purposes unless the legislative intent is clearly and specifically otherwise: Ehret v. Kulpmont Borough School District, 333 Pa. 518, and Walters v. Topper et al., 139 Pa. Superior Ct. 292.

The majority opinion erroneously relies in part upon Kershaw Estate, 352 Pa. 205, and Mellor's Estate, 286 Pa. 149. If at all apposite they stand for the opposite conclusion to that for which they are cited. In Kershaw the proceeding was an appeal by the *personal representative* of the solvent estate of a deceased husband who, with the surviving widow, had owned real estate by the entireties and upon which there was an outstanding mortgage, the bond for which had been executed by both the husband and the wife. Following the husband's death, the widow sold the property, subject to the mortgage, and the Supreme Court decided that since decedent was personally liable on the bond, his estate was indebted for it. Had the bond been collected from the estate, the latter would have had a right of contribution from

the widow for one half; that the right of contribution was, therefore, a taxable asset and the court below correctly allowed a deduction of one half of the amount of the bond in assessing the tax. The cited cases stand for the principle that a debt collectible from a solvent estate in the hands of a personal representative constitutes a valid deduction allowable to such estate.

Mellor's Estate, supra, decided that although the surviving husband of a decedent may be liable for her funeral expenses, the Act of 1919, as amended, lifts that responsibility *for inheritance tax purposes only* from him and places it upon the *testamentary estate*, thereby entitling the *testamentary estate* to the deduction of such expenses in the computation of the tax. This is entirely different from holding that the deduction is available to the computation of the tax on nonprobate property. In the cited cases the deductions were allowed as a matter of right. Here the taxpayer who has no interest in decedent's estate and whose property is not liable for the debt is claiming as a volunteer. In Kershaw the equitable right of contribution arising from the widow's liability for half of the debt was the asset of the estate, not the survivorship right of the husband in the property held by entireties. The taxable property here, not being the subject of the mortgage, which was security for the bond indebtedness, is not associated with any right of contribution.

The Federal cases cited in the majority opinion are inapposite. The natures of the Federal estate tax and of the Pennsylvania transfer inheritance tax are fundamentally different. The impact and the implications of the two taxes are also entirely different. This is exemplified in the necessity which impelled this Commonwealth to pass the Equitable Proration Tax Act of 1937 and the decision of the Supreme Court in

Mellon Estate, 347 Pa. 520, wherein the fundamental equitable rights of contribution between taxpayers of Federal taxes were judicially invoked.

I would follow the decision in Keran Estate, N. Y. Surrogate Court, New York Law Journal, June 29, 1954, where it was held that the deductions for funeral, administration expenses and debts of the estate were limited to the amount of the "true estate" of decedent consisting of the personal property standing in his own name at the date of his death. Nonprobate property was held not entitled to deduction for such expenses and debts.

Palpably, the practice of the Attorney General as stated in the majority opinion in permitting deductions to the payers of taxes on nonprobate property for debts actually paid by such taxpayers is purely a matter of grace. Here the taxpayer did not pay the debt for which the deduction is claimed and for which her property is not amenable for payment.

The exceptions should be sustained and the appeal dismissed.

Judges Hunter and Shoyer join in this dissenting opinion.