**ROTHENSIES, Collector of Internal Revenue, v. CASSELL.**

**No. 6842.**

Circuit Court of Appeals, Third Circuit.

April 6, 1939.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Lyle M. Turner, Sp. Assts. to Atty. Gen.

(J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., and Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., of counsel), for appellant.

Isaac S. Grossman and George V. Strong, both of Philadelphia, Pa., for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

We rather question the soundness of the Treasury's approach to the case at bar. The problem is one phase of the application of taxation to the "cake and eat it" weakness of our human nature. Congress and the courts have had to draw the line between "devices through which men of substance continued their dominion over property and yet evaded taxes which others with no more substantial dominion over the property had to pay", and cases involving genuine relinquishment of property and dominion over it, Sutter and Owen, Federal Taxation of Settlors of Trusts, 33 Michigan Law Review 1169, 1174; Surrey and Aronson, Inter Vivos Transfers and The Federal Estate Tax, 32 Columbia Law Review 1332. Cases may fall on either side of this line—a particular application of Mr. Justice Holmes' line theory first developed in "The Common Law" (1881), p. 127. See Bullen v. Wisconsin, 240 U.S. 625, 630, 36 S.Ct. 473, 60 L.Ed. 830. As Mr. Randolph E. Paul (incidentally at one time a fellow legal Helot of the writer of this opinion) discussing the case last cited in his stimulating Restatement of Tax Avoidance puts it: "The issue is drawn as one in which legitimate avoidance must be recognized and put on the safe side of the line and in which illegitimate avoidance (or evasion) must be put on the wrong side of the same line. Condemnation is for others than courts, the question being a matter of cold-blooded analysis which places a transaction with reference to a line which shifts to some extent as the policy of the law may dictate." Studies in Federal Taxation First Series, p. 101. The same learned author in footnote 349 on p. 101 observes that the decedent was on the right side of the line in Becker v. St. Louis Union Trust Company, 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35. In that we agree with him and by the same token must disagree with the government in the principal case.

The one "phase" referred to in our opening paragraph has been a matter of much litigation ever since the imposition of the first state inheritance tax. The best discussion we know of is contained in two articles by Professor Rottschaefer (Professor of law, University of Minnesota) in 14 Minnesota Law Review 452 and 613. He entitles both articles in the stock words of the statutes, state and federal (26 U.S.C.A. § 411(c), "Taxation of Transfers Intended to Take Effect in Possession or Enjoyment at (or after) Grantor's Death". He phrases our particular circumstance:

"A donor may dispose of property on such terms that there remains a possibility of its reverting to him. The question arises whether the mere existence of this possibility makes a transfer taxable." P. 482.

"The preceding discussion leads naturally to the cases in which the factor that a remainder interest continued contingent or conditional until the donor's death weighed heavily in holding the succession thereto taxable. The provision most frequently considered in this connection is that which makes the right to succeed depend on the remainderman surviving the donor." P. 484.

In reviewing the cases in the state courts holding the transfer taxable, the Professor says: "The theory in the above cases seems to have been that the remainderman's interest continued contingent in right until the donor's death." P. 485. This view of the state cases and of the learned Professor did not meet with the approval of the majority of the Supreme Court. In the Restatement of Tax Avoidance, above cited, Mr. Paul says: "A remote possibility of reverter does not vary the rule that a complete and final transfer will not result in the imposition of estate tax." Studies in Federal Taxation First Series, above cited, pp. 45-46. He cites Becker v. St. Louis Union Trust Company, above cited; Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239; Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160, decisions which had in fact been anticipated by the snuggest possible affirmance of a case arising in this circuit, Helvering, Commissioner of Internal Revenue v. Duke, 3 Cir., 62 F.2d 1057; Duke v. Commissioner, 23 B. T.A. 1103, 1104, affirmed by a divided

**836**

court, 290 U.S. 591, 54 S.Ct. 95, 78 L.Ed. 521. See also Commissioner of Internal Revenue v. Grosse, 9 Cir., 100 F.2d 37.

We complain of the Treasury counsel's failure to meet this existing state of the law with complete candor. The taxpayer very properly made use of the deadly parallel and compared his trust with that of Becker:

| *In the Becker case* | *In the case at bar* |
|---|---|
| "(a) If the said beneficiary should die before my death, then this trust estate shall thereupon revert to me and become mine immediately and absolutely, or | "In trust if the said R. S. shall die during the lifetime of said G. F. U. to pay over the principal and all accumulated income thereof unto the said G. F. U. in fee, free and clear of any trust. |
| "(b) if I should die before her death, then this property shall thereupon ,become hers immediately and absolutely and be turned over to her and in either case this trust shall cease." [296 U.S. 48, 56 S.Ct. 79.] | "In trust if the said R. S. after the marriage shall survive the said G. F. U. to pay over the principal and all accumulated income unto the said R. S.—then R. U.— in fee, free and clear of any trust." |

A skeletonization of the diverse expressions used in both trusts is, we think, even more revealing:

| *In the Becker case* | *In the case at bar* |
|---|---|
| (1) "my daughter" | "R. S." (fiancee) |
| (2) "before my death" | ."during the life time of the said G. F. U." |
| (3) "trust estate" | "the principal and all accumulated income" |
| (4) "revert to me" | "pay over * * * unto the said G. F. U." |
| (5) "mine absolutely" | "free and clear of any trust" |
| (6) "if I should die before her death" | "shall survive the said G. F. U." |
| (7) "turned over" | "pay over" |
| (8) "this trust shall cease" | "free and clear of any trust" |

It is apparent that the only differences are in the relationship of the settlor to the beneficiary and in the first and third person phraseology. To force a distinction from them is as futile as measuring the relative affection implicit in the different ties or appraising the delicacy implicit in avoiding the possessive appellation of the bride-to-be. Our argument notes indicate, that counsel finally abandoned this uncongenial task and frankly stated that he agreed with the minority of the United States Supreme Court in Helvering v. St. Louis Union Trust Company, above cited, and Becker v. St. Louis Union Trust Company, above cited.

Why he did so may appear from a continuance of the deadly parallel method of argument:

*Mr. Justice Sutherland speaking for five Justices*

"The grantor here, by the trust instrument, left in himself no power to resume ownership, possession, or enjoyment, except upon a contingency in the nature of a condition subsequent, the occurrence of which was entirely fortuitous so far as any control, design, or volition on his part was concerned. After the execution of the trust he held no right in the trust estate which in any sense was the subject of testamentary disposition. His death passed no interest to any of the beneficiaries of the trust, and enlarged none beyond what was conveyed by the indenture. His death simply put an end to what, at best, was a mere possibility of a reverter by extinguishing it; that is to say, by converting what was merely possible into an utter impossibility." Helvering v. St. Louis Union Trust Co., above cited, 296 U.S. page 43, 56 S.Ct. page 76, 80 L. Ed. 29, 100 A.L.R. 1239.

"Unlike the Klein Case [Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996], where the death was the generating source of the title, here, as the court below said, the trust instrument and not the death was the generating source. The death did not transmit the possibility, but destroyed it." Helvering v. St. Louis Union Trust Co., above cited, 296 U.S. pages 45, 46, 56 S.Ct. page 77, 80 L.Ed. 29, 100 A.L.R. 1239.

*Mr. Justice Stone dissenting for four Justices*

"It seems plain that the gift here was not complete until decedent's death. He did not desire to make a complete gift. He wished to keep the property for himself in case he survived his daughter. He kept this hold upon it by reserving from his gift an interest, terminable only at his death, by which full ownership would be restored to him if he survived his daughter.
* * *
"Having in mind the purpose of the statute and the breadth of its language it would seem to be of no consequence what particular conveyancers' device, what particular string, the decedent selected to hold in suspense the ultimate disposition of his property until the moment of his death. * * * However we label the device it is but a means by which the gift is rendered incomplete until the donor's death." Helvering v. St. Louis Union Trust Co., above cited, 296 U.S. page 47, 56 S.Ct. page 77, 80 L. Ed. 29, 100 A.L.R. 1239.

"If he had reserved a power to revoke the trust, if he survived her, Reinecke v. Northern Trust Co., supra [278 U. S. 339, 49 S.Ct. 123, 73 L. Ed. 410, 66 A.L.R. 397], would have made the gift taxable, as would Klein v. United States, supra, if he had reserved a remainder in himself with gift over, if he did not survive his daughter. Instead, by using a different form of words, he attained the same end and has escaped the tax. * * *
"In determining whether a taxable transfer becomes complete only at death we look to substance, not to form. Klein v. United States, supra, 283 U.S. [231], 234, 51 S.Ct. 398, 75 L.Ed. 996."
Helvering v. St. Louis Union Trust Co., above cited, 296 U.S. page 47, 56 S.Ct. page 77, 80 L. Ed. 29, 100 A.L.R. 1239.

Why we cannot be so persuaded needs no elaboration. Counsel may in the vernacular pay their money, and take their choice. The choice is not one for an "inferior" Federal court. It must await the judicial miracle of the loaves and fishes, four becoming five.

Mr. Justice Brandeis has, with his customary erudition, collected the cases (some twenty-six in all) in which that parable may be truly applied to the Supreme Court, Washington v. Dawson Co., 264 U.S. 219, 238, 44 S.Ct. 302, 68 L.Ed. 646; Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815. The passage of time enables us to add: Fox Film Corp. v. Doyal, 286 U.S. 123, 52 S.Ct. 546, 76 L.Ed. 1010, overruling Long v. Rockwood, 274 U.S. 729, 47 S.Ct. 587, 71 L.Ed. 1319; West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330, overruling Adkins v. Children's Hospital, 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785, 24 A.L.R. 1238; Helvering v. Mountain Producers Corp., 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907, overruling Gillespie v. Oklahoma, 257 U.S. 501, 42 S.Ct. 171, 66 L.Ed. 338, and significantly Burnet v. Coronado Oil & Gas Co., above cited; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, overruling Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865; and Graves et al. v. People of New York ex rel. O'Keefe, 59 S.Ct. 595, 83 L.Ed. ——, 120 A.L.R. 1466 overruling Collector v. Day, 11 Wall. 113, 20 L.Ed. 122, and New York ex rel. Rogers v. Graves, 299 U.S. 401, 57 S.Ct. 269, 81 L.Ed. 306.

The order of the District Court is affirmed.