103 F.2d 834 (1939)
ROTHENSIES, Collector of Internal Revenue,
v.
CASSELL.
No. 6842.
Circuit Court of Appeals, Third Circuit.
April 6, 1939.
James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Lyle M. Turner, Sp. Assts. to Atty. Gen. *835 (J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., and Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., of counsel), for appellant.
Isaac S. Grossman and George V. Strong, both of Philadelphia, Pa., for appellee.
Before BIGGS, MARIS, and CLARK, Circuit Judges.
CLARK, Circuit Judge.
We rather question the soundness of the Treasury's approach to the case at bar. The problem is one phase of the application of taxation to the "cake and eat it" weakness of our human nature. Congress and the courts have had to draw the line between "devices through which men of substance continued their dominion over property and yet evaded taxes which others with no more substantial dominion over the property had to pay", and cases involving genuine relinquishment of property and dominion over it, Sutter and Owen, Federal Taxation of Settlors of Trusts, 33 Michigan Law Review 1169, 1174; Surrey and Aronson, Inter Vivos Transfers and The Federal Estate Tax, 32 Columbia Law Review 1332. Cases may fall on either side of this line  a particular application of Mr. Justice Holmes' line theory first developed in "The Common Law" (1881), p. 127. See Bullen v. Wisconsin, 240 U.S. 625, 630, 36 S.Ct. 473, 60 L.Ed. 830. As Mr. Randolph E. Paul (incidentally at one time a fellow legal Helot of the writer of this opinion) discussing the case last cited in his stimulating Restatement of Tax Avoidance puts it: "The issue is drawn as one in which legitimate avoidance must be recognized and put on the safe side of the line and in which illegitimate avoidance (or evasion) must be put on the wrong side of the same line. Condemnation is for others than courts, the question being a matter of cold-blooded analysis which places a transaction with reference to a line which shifts to some extent as the policy of the law may dictate." Studies in Federal Taxation First Series, p. 101. The same learned author in footnote 349 on p. 101 observes that the decedent was on the right side of the line in Becker v. St. Louis Union Trust Company, 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35. In that we agree with him and by the same token must disagree with the government in the principal case.
The one "phase" referred to in our opening paragraph has been a matter of much litigation ever since the imposition of the first state inheritance tax. The best discussion we know of is contained in two articles by Professor Rottschaefer (Professor of law, University of Minnesota) in 14 Minnesota Law Review 452 and 613. He entitles both articles in the stock words of the statutes, state and federal (26 U.S.C.A. § 411(c), "Taxation of Transfers Intended to Take Effect in Possession or Enjoyment at (or after) Grantor's Death". He phrases our particular circumstance:
"A donor may dispose of property on such terms that there remains a possibility of its reverting to him. The question arises whether the mere existence of this possibility makes a transfer taxable." P. 482.
"The preceding discussion leads naturally to the cases in which the factor that a remainder interest continued contingent or conditional until the donor's death weighed heavily in holding the succession thereto taxable. The provision most frequently considered in this connection is that which makes the right to succeed depend on the remainderman surviving the donor." P. 484.
In reviewing the cases in the state courts holding the transfer taxable, the Professor says: "The theory in the above cases seems to have been that the remainderman's interest continued contingent in right until the donor's death." P. 485. This view of the state cases and of the learned Professor did not meet with the approval of the majority of the Supreme Court. In the Restatement of Tax Avoidance, above cited, Mr. Paul says: "A remote possibility of reverter does not vary the rule that a complete and final transfer will not result in the imposition of estate tax." Studies in Federal Taxation First Series, above cited, pp. 45-46. He cites Becker v. St. Louis Union Trust Company, above cited; Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239; Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160, decisions which had in fact been anticipated by the snuggest possible affirmance of a case arising in this circuit, Helvering, Commissioner of Internal Revenue v. Duke, 3 Cir., 62 F.2d 1057; Duke v. Commissioner, 23 B. T.A. 1103, 1104, affirmed by a divided *836 court, 290 U.S. 591, 54 S.Ct. 95, 78 L.Ed. 521. See also Commissioner of Internal Revenue v. Grosse, 9 Cir., 100 F.2d 37.
We complain of the Treasury counsel's failure to meet this existing state of the law with complete candor. The taxpayer very properly made use of the deadly parallel and compared his trust with that of Becker:

 In the Becker case In the case at bar
 "(a) If the said beneficiary "In trust if the said R.
 should die before S. shall die during the
 my death, then this trust lifetime of said G. F. U.
 estate shall thereupon to pay over the principal
 revert to me and become and all accumulated
 mine immediately and income thereof unto the
 absolutely, or said G. F. U. in fee, free
 and clear of any trust.
 "(b) If I should die before "In trust if the said
 her death, then this R. S. after the marriage
 property shall thereupon shall survive the said
 become hers immediately G. F. U. to pay over the
 and absolutely and be principal and all accumulated
 turned over to her and income unto the
 in either case this trust said R. S.  then R. U. 
 shall cease." [296 U.S. in fee, free and clear of
 48, 56 S.Ct. 79.] any trust."

A skeletonization of the diverse expressions used in both trusts is, we think, even more revealing:

 In the Becker case In the case at bar
 (1) "my daughter" "R. S." (fiancee)
 (2) "before my death" "during the life time
 of the said G. F. U."
 (3) "trust estate" "the principal and all
 accumulated income"
 (4) "revert to me" "pay over * * * unto
 the said G. F. U."
 (5) "mine absolutely" "free and clear of any
 trust"
 (6) "if I should die before "shall survive the said
 her death" G. F. U."
 (7) "turned over" "pay over"
 (8) "this trust shall "free and clear of any
 cease" trust"

It is apparent that the only differences are in the relationship of the settlor to the beneficiary and in the first and third person phraseology. To force a distinction from them is as futile as measuring the relative affection implicit in the different ties or appraising the delicacy implicit in avoiding the possessive appellation of the bride-to-be. Our argument notes indicate that counsel finally abandoned this uncongenial task and frankly stated that he agreed with the minority of the United States Supreme Court in Helvering v. St. Louis Union Trust Company, above cited, and Becker v. St. Louis Union Trust Company, above cited.
Why he did so may appear from a continuance of the deadly parallel method of argument:

 Mr. Justice Sutherland Mr. Justice Stone dissenting
 speaking for five for four
 Justices Justices
 "The grantor here, by "It seems plain that
 the trust instrument, the gift here was not
 left in himself no power complete until decedent's
 to resume ownership, death. He did not desire
 possession, or enjoyment, to make a complete
 except upon a contingency gift. He wished to keep
 in the nature the property for himself
 of a condition subsequent, in case he survived his
 the occurrence of daughter. He kept this
 which was entirely fortuitous hold upon it by reserving
 so far as any from his gift an interest,
 control, design, or volition terminable only
 on his part was at his death, by which
 concerned. After the full ownership would be
 execution of the trust restored to him if he
 he held no right in the survived his daughter.
 trust estate which in any * * *
 sense was the subject
 of testamentary disposition. "Having in mind the
 His death passed purpose of the statute
 no interest to any of the and the breadth of its
 beneficiaries of the trust, language it would seem
 and enlarged none beyond to be of no consequence
 what was conveyed what particular conveyancers'
 by the indenture. device, what
 His death simply put an particular string, the
 end to what, at best, decedent selected to hold
 was a mere possibility in suspense the ultimate
 of a reverter by extinguishing disposition of his property
 it; that is to until the moment of
 say, by converting what his death. * * * However
 was merely possible into we label the device
 an utter impossibility." it is but a means by
 which the gift is rendered
 Helvering v. St. Louis incomplete until the
 Union Trust Co., above donor's death."
 cited, 296 U.S. page 43,
 56 S.Ct. page 76, 80 L. Helvering v. St. Louis
 Ed. 29, 100 A.L.R. 1239. Union Trust Co., above
 cited, 296 U.S. page 47,
 56 S.Ct. page 77, 80 L.
 Ed. 29, 100 A.L.R. 1239.
 "Unlike the Klein Case "If he had reserved a
 [Klein v. United States, power to revoke the
 283 U.S. 231, 51 S.Ct. 398, trust, if he survived her,
 75 L.Ed. 996], where the Reinecke v. Northern
 death was the generating Trust Co., supra [278 U.
 source of the title, S. 339, 49 S.Ct. 123, 73 L.
 here, as the court below Ed. 410, 66 A.L.R. 397],
 said, the trust instrument would have made the
 and not the death gift taxable, as would
 was the generating Klein v. United States,
 source. The death did supra, if he had reserved
 not transmit the possibility, a remainder in
 but destroyed it." himself with gift over,
 if he did not survive his
 Helvering v. St. Louis daughter. Instead, by
 Union Trust Co., above using a different form
 cited, 296 U.S. pages 45, of words, he attained
 46, 56 S.Ct. page 77, 80 the same end and has
 L.Ed. 29, 100 A.L.R. escaped the tax. * * *
 1239.
 "In determining
 whether a taxable transfer
 becomes complete
 only at death we look to
 substance, not to form.
 Klein v. United States,
 supra, 283 U.S. [231], 234,
 51 S.Ct. 398, 75 L.Ed.
 996."
 Helvering v. St. Louis
 Union Trust Co., above
 cited, 296 U.S. page 47,
 56 S.Ct. page 77, 80 L.
 Ed. 29, 100 A.L.R. 1239.

*837 Why we cannot be so persuaded needs no elaboration. Counsel may in the vernacular pay their money, and take their choice. The choice is not one for an "inferior" Federal court. It must await the judicial miracle of the loaves and fishes, four becoming five.
Mr. Justice Brandeis has, with his customary erudition, collected the cases (some twenty-six in all) in which that parable may be truly applied to the Supreme Court, Washington v. Dawson Co., 264 U.S. 219, 238, 44 S.Ct. 302, 68 L.Ed. 646; Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815. The passage of time enables us to add: Fox Film Corp. v. Doyal, 286 U.S. 123, 52 S.Ct. 546, 76 L.Ed. 1010, overruling Long v. Rockwood, 274 U.S. 729, 47 S.Ct. 587, 71 L.Ed. 1319; West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330, overruling Adkins v. Children's Hospital, 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785, 24 A.L.R. 1238; Helvering v. Mountain Producers Corp., 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907, overruling Gillespie v. Oklahoma, 257 U.S. 501, 42 S.Ct. 171, 66 L.Ed. 338, and significantly Burnet v. Coronado Oil & Gas Co., above cited; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, overruling Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865; and Graves et al. v. People of New York ex rel. O'Keefe, 59 S.Ct. 595, 83 L.Ed. ___, 120 A.L.R. 1466 overruling Collector v. Day, 11 Wall. 113, 20 L.Ed. 122, and New York ex rel. Rogers v. Graves, 299 U.S. 401, 57 S.Ct. 269, 81 L.Ed. 306.
The order of the District Court is affirmed.