BECKER, COLLECTOR OF INTERNAL REVENUE, *v.* ST. LOUIS UNION TRUST CO. ᴇᴛ ᴀʟ., EXECUTORS.

No. 262. Argued October 25, 1935.—Decided November 11, 1935.

*Mr. David E. Hudson,* with whom *Solicitor General Reed, Assistant Attorney General Wideman,* and *Messrs. Sewall Key* and *Maurice J. Mahoney* were on the brief, for petitioner.

*Mr. Crawford Johnson,* with whom *Mr. Thomas S. Mc-Pheeters* was on the brief, for respondents.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The decedent in 1921 executed separate declarations of trust in favor of each of his four children, conveying to himself as trustee certain securities. He died in 1928, at which time the entire trust estate conveyed by the four trusts amounted to nearly a million dollars, which amount was included by the Commissioner of Internal Revenue as a part of the gross estate of the decedent and an additional estate tax assessed accordingly. The executors, having paid the additional tax, brought this action in a federal district court sitting in Missouri to recover the amount. The district court denied recovery upon the grounds that the transfer effected by each declaration of trust was made in contemplation of death and that it was intended to take effect in possession or enjoyment at or after decedent's death.

The Court of Appeals, after a very full review of the facts and authorities, reversed the judgment. 76 F. (2d) 851. The case is here on certiorari.

The declarations of trust were in identical terms. By each the grantor declared that he held in trust for the person named certain property which was described. A copy of one of them is set forth in the opinion of the court below. The trust instrument gave the trustee usual discretionary power with respect to sale of the trust property, reinvestment of proceeds, collection of rents, income and profits, payment of taxes and expenses incident to the

care, preservation and management of the property; and provided that he should pay to the beneficiary an allowance of $300 a month, which might be increased or decreased from time to time in his discretion. Income not distributed was to be added to the principal. The final clause of the declaration provided:

" 6. (a) If the said beneficiary should die before my death, then this trust estate shall thereupon revert to me and become mine immediately and absolutely, or (b) if I should die before her death, then this property shall thereupon become hers immediately and absolutely and be turned over to her and in either case this trust shall cease."

The government presents for our determination two questions—whether, under the provisions of § 302 (c), Revenue Act of 1926, a transfer of the property under each of the instruments here involved, (1) was intended to take effect in possession or enjoyment at or after the death of the grantor; (2) was made in contemplation of death.

*First.* The first of these questions is settled by our decision just rendered in the case of *Helvering* v. *St. Louis Union Trust Co., ante,* p. 39. By the declaration of trust here under review, the legal title, possession and control of the trust estate passed irrevocably from the grantor as an individual to himself as trustee. The effect is no different than if the trustee had been another person. Cf. *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339, 346. By the final paragraph of the declaration, quoted above, the grantor does not retain any interest in the property, but, recognizing the completeness of the transfer, he provides that the property shall revert to him in case the beneficiary shall predecease him. The provision that the trust estate shall " revert " in case of the predecease of the beneficiary removes any doubt as to the completeness of the transfer, if otherwise there would be any. The

question, therefore, is whether the mere possibility of a reverter stamps the transfer as one intended to take effect in possession or enjoyment at or after the death of the grantor. The decision just rendered answers this question in the negative.

*Second.* The transfer to the trustee was complete and became effective when made, seven years before the death of the decedent. The factor which brings a gift *inter vivos* within the reach of § 302 (c) with respect to transfers made in contemplation of death " is to be found in the transferor's motive." *United States* v. *Wells,* 283 U. S. 102, 117. " Death must be ' contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. . . . The question, necessarily, is as to the state of mind of the donor. . . . If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts *inter vivos* which spring from a different motive." p. 118. The opinion proceeds to give illustrations of those motives which have reference to life rather than to death—as, for example, the desire to be relieved of responsibility; to have children independently established with competencies of their own. In each case the circumstances are to be scrutinized in order to discover the dominant motive of the donor in the light of his bodily and mental condition. p. 119.

In the present case the district court found that the motive of decedent was to decrease his income tax by distributing a portion of his property among the four trusts and, at the same time, to make provision for the distribution of the property to his children at decedent's death, and concluded therefrom that the transfer was made in contemplation of death. The Circuit Court of Appeals reached the opposite conclusion. It found on the evidence that the decedent, in making the trusts, was

actuated by two motives—(1) to make his children independent; (2) to avoid high surtaxes on his income; and that both of these motives were associated with life. Evidence that the decedent was in any way influenced in what he did by the thought of death, that court said, was entirely lacking.

It is true that the decedent at the time of making the trusts was 76 years of age. But the evidence shows clearly that he was in excellent health, attending regularly to business, apparently was not looking forward in any way to his death, came of a very long-lived family, expected to live well beyond the age of 90, and in fact lived seven years after making the trusts. The beneficiaries were all past 21 years of age, and the record shows only that the grantor's objects were to make them allowances in order to get rid of the nuisance of treating them as children, make them independent so they would know what they were to get each year, and, as he had ample income of his own, to avoid the high surtax and make each of his children pay a tax on the independent income received.

We are unable to find anything in the record which conflicts with the statement of the court below that evidence that decedent was in any way influenced by the thought of death was wholly lacking. The government argues that the finding of the trial court in respect of the matter is the same as that of the commissioner, and that this circumstance gives additional weight to that court's finding. Our attention has not been called to anything in the record which shows that the commissioner's determination rested upon such a finding. The petition alleges that the reason which brought about the commissioner's determination was that the transfer was one which " did not take effect in possession or enjoyment until at or after the death of the decedent," and that he so advised the respondents by letters. The answer affirmatively alleges that the commissioner's rea-

sons were " that there had been no transfer of such property during the lifetime of the decedent; that such property was transferred at and as a result of the death of the decedent; and that such transfer was intended to take effect at or after the death of the decedent," and that the commissioner advised respondents accordingly. We are unable to find anything in the record which justifies the conclusion that the commissioner specifically determined that the transfers were made in contemplation of death, or, indeed, that there was any evidence before him on that subject.

In this state of the record it cannot be said that the finding of the trial court in this regard obtains any support from the determination of the commissioner. The situation simply is that the findings of the lower courts upon the matter are in conflict; and a careful examination of the evidence contained in the record convinces us that the finding of the trial court was erroneous, and we so hold.

*Judgment affirmed.*

The CHIEF JUSTICE, MR. JUSTICE BRANDEIS, MR. JUSTICE STONE and MR. JUSTICE CARDOZO dissent for reasons stated in their dissent in *Helvering* v. *St. Louis Union Trust Co.*, *ante*, p. 46.