WILLIAM CLARK ARKELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84812.   Promulgated July 26, 1938.

*George H. Craven, Esq.*, for the petitioner.
*A. T. Akin, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $17,-657.65 in the petitioner's income tax for 1933. The only issue for decision is whether the Commissioner erred in including in the petitioner's income $37,386.75, representing dividends received by W. C. Arkell Trust #2 and used by that trust to pay premiums on insurance policies upon the life of Bartlett Arkell. The facts were stipulated and are found as stipulated.

The petitioner, William Clark Arkell, was married and was living during 1933 with his wife, Anne, and his three children, then aged

178

18, 16, and 10. Bartlett Arkell is the father of the petitioner. Bartlett, after discussions with the petitioner and between the petitioner and Anne, created the trust involved herein on April 21, 1932. These three had agreed that Bartlett would create the trust for the benefit of the petitioner and his children; Bartlett would convey to the trust some existing insurance policies upon his own life; and the petitioner and Anne would convey to the trust income-producing securities to provide for the payment of premiums on the policies. Bartlett irrevocably assigned the life insurance policies to the trust. Anne assigned to the trust 4,780 shares of Beech-Nut Packing Co. common stock and $5,000 in cash, and the petitioner assigned to it 14,000 shares of the same stock and $20,000 in cash. The income here in question was that part of the dividends on that stock received by the trust during its fiscal year ended April 30, 1933, used to pay premiums on the Bartlett Arkell life insurance policies held by the trust. Bartlett was alive and the policies were in effect during all of 1933. The petitioner reported as his income only that part of the income of the trust which was not used to pay the premiums.

The trust indenture named Bartlett as settlor and the petitioner as trustee. The trustee was to hold the policies until they became payable and then was to hold the proceeds in trust during the life of the petitioner. Income from the proceeds was to be used for the benefit of the petitioner during his life and thereafter the corpus was to go to his issue, except that, if Bartlett's wife, Louise, survived the petitioner, she should receive the income on one-third of the proceeds for her life.

The following powers, *inter alia*, were conferred upon the trustee:

SECOND: The Trustee shall have, with respect to each of the policies assigned hereby, or any paid-up additional insurance purchased with annual dividends thereon, or any paid-up insurance, whether extended term or otherwise, received in the event of a surrender or lapse of any policy, the sole right to exercise any and all of the benefits, rights, options and privileges of whatsoever kind pertaining to such policy and may exercise the same, or refrain from exercising the same, at such times and in such manner as he may in his absolute discretion from time to time deem advisable, including, but not by way of limitation, the right (1) to borrow thereon; (2) in the event of the surrender or lapse of such policy, either (a) to receive the cash surrender value thereof, (b) to direct the purchase of non-participating paid-up life insurance, or (c) to continue the insurance for its face amount as paid-up extended term insurance; (3) to direct the disposition of the annual dividends on such policy. The Trustee shall direct that the dividends on such policies as are not fully paid-up, be applied in reduction of the premiums on such policies. The Trustee is hereby expressly authorized and empowered to do and perform any and all acts, and to make, execute and deliver any and all written instruments, which he, in his sole judgment, may deem advisable in order that all the benefits, rights, options and privileges under the policies of insurance held by him hereunder from time to time shall be vested in the Trustee. The Trustee shall in-

cur no liability for any action taken by him, or for his omission to take any action, in the exercise of any of the benefits, rights, options, and privileges hereinbefore conferred upon him, in good faith. The Settlor shall do and perform any and all acts, and make, execute and deliver any and all written instruments, which may be necessary in order to give full force and effect to the foregoing provisions of this Trust Agreement.

Paragraph "fifth" of the indenture was as follows:

FIFTH: Notwithstanding any of the foregoing provisions: The Settlor's said son, William Clark Arkell, shall have the power, either by deed or by last will and testament, to appoint and direct other and different uses or dispositions of the principal and/or income of the trust hereby created, PROVIDED, HOWEVER, that such power of appointment shall be, and the same is hereby expressly, limited as follows: FIRSTLY, if exercised by deed it shall be exercised only in such manner that it will not entitle the Settlor's said son to vest in himself, or in another for his own use or benefit, title to any part of the principal or income of the said trust: SECONDLY, whether exercised by deed or will, it shall be exercised in such manner that it will only be for the benefit of a person or persons related by blood or marriage to the Settlor's said son or the Settlor. The said power of appointment by deed may be exercised by the Settlor's said son at any time and from time to time and either wholly or partially.

The trust indenture in paragraph "seventh" contained provisions for the resignation of the trustee without an accounting and the appointment by Bartlett, during his life, of a successor trustee in case the petitioner ceased to be the trustee. The successor was to have all powers of his predecessor as trustee. The settlor retained the right to modify or alter provisions of the indenture relating only to the powers of the trustee. Paragraph "ninth" provided as follows:

NINTH: The Trustee may receive from the Settlor, or any other person, at any time and from time to time, property delivered to the Trustee to be held subject to the trusts hereby created. Notwithstanding any of the foregoing provisions, the Settlor's said son shall have the power at any time and from time to time to amend the provisions of this instrument to provide for the application of income and/or principal of the trust in payment of the premiums on the insurance policies from time to time subject to this Agreement, Provided Always, However, that no part of the income of property at any time added to the trust by the Settlor shall be applied to the payment of premiums upon the said policies of insurance on the life of the Settlor.

The petitioner, when the income-producing property had been conveyed to the trust, amended the indenture to provide as follows:

A. During the life of the Settlor the Trustee shall, notwithstanding anything in said instrument to the contrary, first apply the net income of the trust fund in paying the premiums on the policies of insurance on the life of the Settlor from time to time subject to said instrument, and shall apply the remaining income, if any, as provided in said instrument for all the income of the trust fund.

B. The Trustee may, however, retain out of the income of the trust fund remaining after the payment of premiums, so much thereof as in the discretion of the Trustee may be necessary to provide for the proper payment of premiums not then due.

C. If the net income of the trust fund shall at any time be insufficient to pay the premiums upon any such policy of insurance on the life of the Settlor, the Trustee may make such payment out of the principal of the trust fund. The Trustee shall be under no obligation to pay any premium on any such policy unless the Trustee shall have sufficient cash for the payment thereof on or before the expiration of the grace period for the payment of such premium.

He also amended the instrument to provide that any principal added to the trust by himself or his wife should go as if Louise had predeceased the petitioner, i. e., he provided that such property would not benefit Louise.

The respondent attempts to support the determination of the deficiency upon the ground that section 167 (a) (2) of the Revenue Act of 1932 applies. The pertinent parts of section 167 are as follows:

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

\*          \*          \*          \*          \*          \*          \*

(2) may, in the discretion of the grantor or any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor.

(3) \* \* \* then such part of the income of the trust shall be included in computing the income of the grantor.

The petitioner concedes that he is a grantor within the meaning of that term as used in section 167.

The respondent contends that the petitioner had a choice, under the powers granted to him in paragraphs "second", "fifth", "seventh", and "ninth" of the deed of trust, to use the income of the trust to pay the premiums or to simply pay that income to himself. If he did not have to use the income to pay the premiums but could use it for his own benefit, then, of course, section 167 (a) (2) applies and that income is taxable to him. The petitioner included the excess trust income in his own income, apparently upon the theory that section 167 (a) (2) applied to that and he resists as to the income in question solely upon the ground that he had no alternative but to use that income to pay the premiums.

The respondent points, first, to the powers granted to the trustee in paragraph "second." The trustee was given the sole and absolute right to exercise or to refrain from exercising any and all of the benefits and rights pertaining to the policies, including the right to surrender, to allow them to lapse, or to convert them into paid-up policies. He was liable to no one for action thus taken in good faith. The respondent contends that by exercising these powers at any time he could have avoided the payment of the premiums and thus have received distribution of all of the current income of the trust. The petitioner answers that the powers were granted to the trustee, not to the petitioner as cograntor, and the powers could only be exercised

when, as, and if circumstances arose which would justify the acts as being for the good of the trust, i. e., the powers were given him merely that he might act in all circumstances for the best interests of the trust.

The distinction between the petitioner as cograntor and as fiduciary is not important here, since the statute refers to a discretion of either the grantor or any other person whose interest is not adverse. Certainly the interest of the petitioner in his fiduciary capacity was not adverse to his interests otherwise. Cf. *Reinecke* v. *Smith*, 289 U. S. 172; *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48; *William R. Stewart et al.*, *Executors*, 28 B. T. A. 256; *Edward Jackson Holmes et al.*, *Executors*, 30 B. T. A. 97; *Kaplan* v. *Commissioner*, 66 Fed. (2d) 401. Thus, if he had the required discretion in either capacity, the statute applies.

Courts will exercise broad equitable powers to protect beneficiaries of trusts in case a trustee acts to gain some personal advantage. But we can not say that any court would intervene to prevent this trustee from converting these policies into paid-up insurance, for example, if he decided upon such a move. His reason might be that he needed the Beech-Nut dividends for some personal or family use, more or less urgent. Or he might decide that paid-up insurance would properly serve the purposes of the trust. The limitation upon his power to act is slight indeed. He merely had to act in good faith. Many possible reasons might prompt him to act which would be sufficient under the terms of this trust. This is particularly true in view of the fact that he was the first beneficiary under the trust and his own issue were the ultimate beneficiaries. The reason for giving him the powers is of importance in interpreting the instrument to determine the extent of his powers. Here, however, he is plainly given these broad powers and he could exercise them in good faith at any time to his own advantage without violating any equitable principle. The entire instrument does not indicate a different intent on the part of the grantor or grantors. Consequently, it may be said fairly that he had the discretion to act in such a way as to avoid at any time the necessity of paying additional premiums and thus gain the income for himself.

Furthermore, his amendment, directing the use of the first trust income for the payment of the premiums, could be changed by him at any time. He could have provided that a part or all of the premiums should be paid from principal. Or he might have provided for the payment of the premiums from some wholly different funds. That would have given him the use of additional trust income.

The petitioner was not the "grantor" of that part of the trust corpus contributed by his wife and he has argued that $14,340, the income from that part of the trust, can not be taxed to him under

section 167 (a) (2). That question is one which will not be decided here. The deficiency notice indicates that all of the income in question was taxed to the petitioner under section 167 (a) (3). The respondent concedes that that provision is inapplicable. He makes no reply to the argument that the income from the securities contributed by the wife can not be taxed to the petitioner. The circumstances called for some reply if the respondent thinks that income can be taxed to the petitioner. Under all of the circumstances it seems fair to assume, and we are assuming, that the point discussed in this paragraph is not urged on behalf of the respondent.

The parties have cited several cases, but none seems to be quite in point on whether or not section 167 (a) (2) applies. The case of *Lucy A. Blumenthal*, 30 B. T. A. 591, is clearly distinguishable on its facts. *Gail H. Baldwin*, 36 B. T. A. 364, is like the *Blumenthal* case. The discretion in the trustee in *Higgins* v. *White*, 93 Fed. (2d) 357, places a real limitation upon his acts. The petitioner has also contended that section 167, as here applied, is unconstitutional. The provision is constitutional. *Corliss* v. *Bowers*, 281 U. S. 376.

*Decision will be entered under Rule 50.*