*Judgments will be entered under Rule 50.*

---

MERCHANTS NATIONAL BANK, OF CEDAR RAPIDS, TRANSFEREE AND FIDUCIARY, BEING TRUSTEE UNDER FOUR CERTAIN TRUST AGREEMENTS EXECUTED BY ELMER A. HIGLEY FOR THE BENEFIT OF HELEN L. HIGLEY, HARVEY D. HIGLEY, FRED M. HIGLEY, AND HELEN E. HIGLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78576. Promulgated December 8, 1938.

*Dan Barnes, Esq.*, and *Park Chamberlain, Esq.*, for the petitioner.
*L. S. Pendleton, Esq.*, for the respondent.

OPINION.

KERN: The primary issue presented in this proceeding is whether the transfers of property made by the decedent Elmer A. Higley some four years prior to his death on September 4, 1926, were made by him in contemplation of death and whether, therefore, as respondent contends, the property was includable in his gross estate pursuant to the provisions of section 302 (c) of the Revenue Act of 1926, set out in the margin.[1]

At the time the transfers were made decedent was 65 years old and he was, and had always been, in good general health. While he

---

[1] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this Act, without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

suffered from an atrophied arm and a slight deafness, and had, on occasion been treated for catarrh, colds, and a sinus infection, he had been remarkably free from organic illness throughout his life. Not only was he in good general health, but he was also a man of cheerful disposition, engrossed in his work, and greatly interested in the office buildings which he had acquired or constructed and in their management. He did not think or have reason to think that his death was imminent or would occur in the reasonably near future. In making the transfers involved in this proceeding he regarded his death as a remote contingency, but one to be guarded against.

Decedent made the transfers of his property to the corporation and established the trusts which ultimately held its stock for several reasons. He was keenly interested in the success of his office buildings and was deeply concerned with the importance of lessening the indebtedness which constituted a lien on them. He was anxious that his children should take an interest in them and was especially anxious to interest his son, Fred M. Higley, in their management. He desired in the event of his death to obviate the necessity of selling the buildings in order to settle his estate, having had difficulties himself along this line on the occasion of the death of his father. He wished to provide for the payment of some of the income from the buildings to his children as soon as the indebtedness against the buildings was reduced to a figure which he considered safe. At the same time he was determined to maintain control over the operation of these properties during his lifetime and he provided for this and also for compensation to him for his services. The plan which was worked out during the years immediately prior to the transfers and was accomplished by them effected purposes connected with life and not with death. The plan, it is true, was intended to make provision for his family in the event of his death, but it was also designed, regardless of the disposition of the properties, to protect them during the remainder of his life, as well as after his death. He had no purpose of evading estate taxes in making these transfers.

Under these circumstances it is our opinion that the transfers were not made in contemplation of death. *United States* v. *Wells*, 283 U. S. 102; *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48; *Colorado National Bank of Denver* v. *Commissioner*, 305 U. S. 23.

It is, therefore, unnecessary to discuss the other issues presented.

The 25 per centum additional tax claimed falls, of course, with the deficiency.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

DISNEY dissents.

Turner, dissenting: Because of difficulties experienced in the distribution of his father's estate, the decedent above all desired to control the division of his property at death and in my opinion that desire and intent to so control the division of his property at death was the dominant motive for the transfer by the decedent of all of his property to Elmer A. Higley, Inc., and the subsequent transfer of the stock of that corporation to the Merchants National Bank of Cedar Rapids, as trustee. Matters pertaining to life were of secondary importance. The usual argument is advanced that the decedent made the transfers to trust in order that his son, in this case Fred M. Higley, might gain experience during the lifetime of his father in the management of the office buildings and properties. It is to be noted, however, that the decedent very carefully and definitely avoided and refrained from placing any responsibility upon and from delegating any authority to Fred M. Higley during his lifetime by making a specific provision that he, the decedent, should be the sole officer and director of the corporation during his lifetime and in the event he should become incapacitated the decedent's wife should become the sole officer and director. It was only after the death of both the decedent and his wife, or until his wife should become incapacitated or should decline to act, that Fred M. Higley or any of decedent's children should have any voice in the management of the properties.

I respectfully disagree with the conclusion of the majority that the transfers in question were not made in contemplation of death.

Opper agrees with this dissent.