WILLIAM T. WALKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92600. Promulgated October 19, 1939.

*Raymond H. Berry, Esq.*, and *Arthur L. Evely, Esq.*, for the petitioner.

*T. F. Callahan, Esq.*, for the respondent.

OPINION.

LEECH: Petitioner seeks redetermination of deficiencies in gift taxes of $552.40 and $1,121.29, for the calendar years 1935 and 1936, respectively. He also asks a finding that he has overpaid gift taxes for those years in question, in the respective amounts of $145.85 and $203.83. The issue is whether petitioner's transfers of securities and cash in 1935 and 1936, to a trust created by him in 1930, are subject to gift tax under section 501 of the Revenue Act of 1932, as amended. The facts have been stipulated.

Petitioner, a resident of Detroit, Michigan, established an irrevocable trust on April 14, 1930, to provide his mother with a life annuity and to have the income in excess of the annuity requirements paid to himself. He conveyed to the Detroit & Security Trust Co. and himself, as trustees, certain named securities having a then market value of $155,222.50. The trust company was a Michigan corporation. These securities were to be held in trust during the life of the donor's mother, Edith T. Bradley, and were to be invested and reinvested subject to the joint control of the petitioner as cotrustee. Petitioner, as donor, reserved the privileges of adding securities to and withdrawing securities from the trust corpus, provided that in the latter case he substituted others of equal value. Further material portions of the trust instrument follow:

Out of the net income arising from investments and reinvestments made or held under authority of this instrument, and as far as shall be necessary out of the trust principal, the TRUSTEES, or in case said WILLIAM T. WALKER shall cease to act as COTRUSTEE for any reason, then the corporate TRUSTEE alone, or its successor, if any, shall pay to the DONOR's mother, EDITH T. BRADLEY, the sum of FIVE HUNDRED ($500.00) DOLLARS each month during her entire life, but all net income in excess of FIVE HUNDRED ($500.00) DOLLARS each month shall be paid, in monthly installments, to the said WILLIAM T. WALKER.

Upon the death of the said EDITH T. BRADLEY, this trust shall terminate and all money, property and securities then held under authority hereof shall be assigned, transferred and delivered to the said WILLIAM T. WALKER, if he be then living, and if not, then unto his issue, per stirpes; but if the said WILLIAM T. WALKER shall predecease his mother and leave no issue who survive the said EDITH T. BRADLEY, then upon the termination of this trust all money, property and securities held hereunder shall be distributed among the then living heirs-at-law of said WILLIAM T. WALKER, as though he had then owned the trust property and died intestate, the persons to benefit hereunder to be selected and the distribution to be made in accord with the laws of Michigan which at that time govern the distribution of the personal property of those who leave no Last Will and Testament. The distribution shall be made in kind as far as practicable.

The trustees were to have powers to manage, to control, to purchase proper trust investments, to borrow and to pledge; and the corporate trustee was directed to retain all securities in the trust as long as petitioner should act as cotrustee unless he consented to a sale, exchange, or other disposition thereof.

A further provision was as follows:

No part of this trust property, while subject to the control of any person acting as TRUSTEE hereunder, shall ever be subject to transfer, assignment, sale, pledge or anticipation in any other manner by the beneficiary or any remainderman hereunder, nor shall the interests of the beneficiary or any remainderman, prior to the final distribution of the last remaining portion of this trust property, be seized in any manner or held liable for his or her debts, contracts, obligations or engagements of any kind whatsoever.

On February 18, 1935, petitioner, without increasing the amount to be paid to his mother under the terms of the trust, added securities thereto having a market value of $45,925.

On March 8, 1935, the trust was amended to reserve to petitioner the power to direct investments and reinvestments, petitioner agreeing to save the corporate trustee harmless in case any of the directions should be to invest the trust funds in improper trust investments.

During the year 1936, petitioner, without increasing the amount to be paid to his mother under the terms of the trust, added a total of $20,000, in cash, to the corpus of the trust.

Petitioner was born on February 22, 1904, and his mother, Edith T. Bradley, was born on July 3, 1884.

Petitioner filed a gift tax return on March 15, 1936, in which he reported the 1935 transfer of securities to the trust, together with another gift not here in question. In that return the value of the life interest of petitioner's mother in the securities transferred to the trustees was stated to be $22,373.17, which amount, less the $5,000 exclusion, was included in the return as a taxable gift. At the time of filing the return, he paid a gift tax of $145.85.

Petitioner also filed a gift tax return on March 15, 1937, in which he reported the 1936 transfers of cash to the trust. In that return the value of the life interest of petitioner's mother in the cash transferred to the trustees was stated to be $9,507.26, which amount, less the $5,000 exclusion, was included in the return as a taxable gift. At the time of filing the return he paid a gift tax of $203.83.

Respondent determined deficiencies for both years on the theory that the full market value of the property transferred to the trust should have been returned as taxable gifts. The petition in this proceeding was filed with the Board on March 14, 1938.

Since the estate tax and the gift tax supplement each other and may be construed in conjunction (*Hesslein* v. *Hoey*, 91 Fed. (2d)

954; certiorari denied, 302 U. S. 756; *Harriet W. Rosenau*, 37 B. T. A. 468) it is proper to test the instant trust by considering whether petitioner as grantor retained an interest which will eventually be taxable as part of his gross estate. If he did, then and to that extent, the creation of the trust in 1930, and the subsequent transfers in 1935 and 1936, did not constitute completed gifts.

By the trust instrument, petitioner gave his mother an annuity of $6,000 for the rest of her life, payable out of income so long as the income was sufficient, and otherwise to be paid out of corpus. Her life interest in the trust was confined to that specific annual sum. See *Burnet* v. *Whitehouse*, 283 U. S. 148. All the excess income was to be paid to petitioner. The trust was to end upon the mother's death and the corpus was to be returned to petitioner if he should then be alive, or if he were dead, to his issue per stirpes; if he should die before his mother and leave no issue, then upon the termination of the trust, the corpus was to be distributed among those living persons who should be petitioner's heirs at law under the laws of Michigan.

Our initial question is whether the interest retained by petitioner is a possibility of reverter or a reversion. If it is the former, it will form no part of his gross estate and the 1935 and 1936 transfers to the trust, made after the enactment of the tax on gifts in the Revenue Act of 1932, are completed gifts. If it is a reversion, then either the gift of a life annuity was completed in 1930, and the subsequent transfers merely increased the value of the reversion, or the donor is taxable only to the extent of his mother's life interest in the property transferred.

According to the law of Michigan, under which the interests thus granted and retained by petitioner are to be determined (*Kinney's Estate* v. *Commissioner*, 80 Fed. (2d) 568; *Estate of Waldo C. Bryant*, 36 B. T. A. 669; affd., 104 Fed. (2d) 1011), "A reversion is the residue of an estate left in the grantor or his heirs, or in the heirs of a testator, commencing in possession on the determination of a particular estate granted or devised." Compiled Laws of Michigan, 1929, sec. 12932; *In re Coots' Estate*, 253 Mich. 208; 234 N. W. 141. Petitioner's transfer of property to a trustee does not, by itself, carry with it any interest he may have in such property by way of reversion. If he has a reversionary interest it will pass to others by reason of his death, and will pass from him as an individual, not from the trustees. *Kinney's Estate* v. *Commissioner*, *supra*. See also *Security-First National Bank of Los Angeles, Executor*, 35 B. T. A. 815; *Jay C. Hormel*, 39 B. T. A. 244; *Doctor* v. *Hughes*, 225 N. Y. 305; 122 N. E. 221.

Here, the petitioner retained the right to the income from this estate, so far as it should exceed $6,000 per annum, powers of management, and the right to the return of the corpus upon the death of his mother should he then be alive. The latter right was the "residue" of the estate left in him. If he had died, the trust property was to be returned to his issue per stirpes, or if there were none, to his heirs at law. Thus, it is clear that, under Michigan law, and otherwise (*Security-First National Bank of Los Angeles, Executor, supra; Jay C. Hormel, supra; Doctor v. Hughes, supra*), petitioner retained a reversion in the trust corpus. The fact that petitioner, the holder of that reversion, might die before coming into its possession leaves it none the less vested at the creation of the particular estate. His death during the existence of that estate would merely divest it.

The facts in both *Helvering v. St. Louis Union Trust Co.*, 296 U. S. 39, and *Becker v. St. Louis Trust Co.*, 296 U. S. 48, are distinguishable. In those cases, the estate after the life estate was to go in the first instance to persons other than the grantor. His reacquisition of the corpus was conditioned upon his survival of each life beneficiary. Otherwise, the future interests continued their predestined course, and did not come back into his estate and to those who would be his heirs at law. But in the present situation, the corpus of the trust was to be returned to the grantor the moment his mother died, almost as if the trustees were tenants for years of the corpus and the grantor the landlord. If he were not alive at the termination of the trust, i. e., at the death of his mother, the corpus would not then go over to named remaindermen, as was true in *Helvering v. St. Louis Trust Co., supra*, or vest absolutely in the life tenant as in the *Becker* case, but would go to whoever might be his issue or his heirs at law. His death would divest his reversionary interest in their favor, and would vest their contingent remainders. It would be the "generating source of their rights" to the reversion he held during his life. It would remove the legal uncertainty of their interests and divest the prior vestiture of his. *Doctor v. Hughes, supra.*

This conclusion is supported by *Estate of Waldo C. Bryant, supra*, which illustrates the distinction just made. In that case there were two trusts, under one of which it was held that the grantor retained a reversion and, under the other, a possibility of reverter. The first trust, the material provisions of which were quite similar to those here, provided that the income from the trust should be paid to the grantor's wife for life and then to the grantor for his life. Upon the death of the survivor, the corpus of the trust was to be paid over to the executors or administrators of the grantor's estate. Decedent predeceased his wife and left a will which devised and bequeathed the

corpus, after his wife's death in trust for his children and grand-children. It was held that the decedent grantor had retained a vested reversionary interest. In the second trust, the income was to be paid to the decedent grantor's daughter for life and upon her death the corpus was to be returned to the grantor, if living, but otherwise was to go to his wife, or if she were dead, to the issue of the daughter, etc. Here it was held the grantor retained a mere possibility of reverter.

*Hughes* v. *Commissioner*, 104 Fed. (2d) 144, upon which respondent relies as conclusive, involved different facts. *Helvering* v. *St. Louis Union Trust Co.*, *supra*, and *Becker* v. *St. Louis Trust Co.*, *supra*, were not cited. And, of great significance, the Court held the donor's retained interest might have value, but, since no value was established, the value of the trust corpus was taxed as a gift.

To hold that a retained interest may have value is to hold that it is a reversionary interest, for a possibility of reverter can not be valued. *Commissioner* v. *Hallock*, 102 Fed. (2d) 1. The present trust is a spendthrift one. Consequently the *Hughes* decision is authority for the conclusion here reached, namely, that petitioner retained a valuable reversionary interest when he created the trust in 1930.

Having concluded that petitioner retained a reversion, did the 1935 and 1936 transfers merely increase the value of petitioner's reversion, or should they be separated into a life interest in petitioner's mother, which will be taxable to petitioner as a gift to his mother, and a reversionary interest in petitioner, as would have been done with the original transfer in trust had a gift tax been in force at that time? The securities transferred in 1930 exceeded the then value of the mother's $6,000 annuity. Their value at the time of transfer was $155,222.50. The then value of the annuity would have been only $83,021.46. In 1935, it would have been $74,405.11 and in 1936, $72,602.22. Regulations 79, art. 19 (7) and table A. Petitioner, however, has not shown the values of the securities in the trust in 1935 and 1936, on the dates of those respective transfers. For all that is in the record, the corpus may then have been less than the remaining value of the annuity.

Accordingly, we must hold that petitioner is not entitled to a finding of overpayment. He has returned and paid his gift tax on the theory, here deemed to be correct, that the taxable extent of the 1935 and 1936 transfers was the life interest of his mother in the property transferred. See *Katherine S. Rheinstrom*, 37 B. T. A. 308 (affirmed on this point, 105 Fed. (2d) 642). Therefore,

*Judgment of no deficiency will be entered.*