EVA N. PERRY, AS EXECUTRIX OF THE LAST WILL AND
TESTAMENT OF RALPH H. PERRY, DECEASED, PROSE-
CUTRIX, v. J. H. THAYER MARTIN, STATE TAX COM-
MISSIONER, DEFENDANT.

Argued May 8, 1940—Decided July 5, 1940.

Before Justices CASE, DONGES and HEHER.

For the prosecutrix, *Wall, Haight, Carey & Hartpence* (*William H. Carey* and *Edward J. O'Mara,* of counsel).

For the defendant, *David T. Wilentz,* attorney-general (*William A. Moore,* of counsel).

The opinion of the court was delivered by

HEHER, J.   The question at issue is whether a series of *inter vivos* transfers of property, made by the testator to his wife, were "in contemplation of death" within the purview of section 1 of chapter 228 of the laws of 1909, as amended by chapter 90 of the laws of 1935 (*Pamph. L.* 1909, *p.* 325; *Pamph. L.* 1935, *p.* 264; now *R. S.* 1937, 54:34-1), and therefore subject to the transfer inheritance tax therein levied.

The State Tax Commissioner resolved the issue in the affirmative; and the consequent assessment of taxes was affirmed by the Prerogative Court.   Vice-Ordinary Buchanan found that the gifts were "made in lieu and stead of testamentary disposition."

The primary insistence of prosecutor is that none of the gifts was made in contemplation of death within the intendment of the statute.   It is said that the "uncontradicted evidence is that the motive for making the gifts related to purposes associated with life rather than with the distribution of property in anticipation of death," and they are therefore not taxable.

The outstanding purpose of this and kindred provisions of the statute is to "reach substitutes for testamentary dispositions," and thus to preclude the evasion of the inheritance taxes therein prescribed.   This interpretation of a like pro-

vision of the Federal Estate Tax act has been accepted by our courts. *In re Grabfelder,* 107 *N. J. L.* 520; *Schweinler* v. *Thayer-Martin,* 117 *N. J. Eq.* 67; *affirmed,* 13 *N. J. Mis. R.* 722; *In re Fischesser,* 14 *Id.* 815; *In re Gould,* 105 *N. J. Eq.* 598; *affirmed,* 8 *N. J. Mis. R.* 798; *affirmed,* 108 *N. J. L.* 197; *Becker* v. *St. Louis Union T. Co.,* 296 *U. S.* 48; 56 *S. Ct.* 78; 80 *L. Ed.* 35; *United States* v. *Wells,* 283 *U. S.* 102; 51 *S. Ct.* 446; 75 *L. Ed.* 867; *Milliken* v. *United States,* 283 *U. S.* 15; 51 *S. Ct.* 324; 75 *L. Ed.* 809. See, also, *Hartford* v. *Martin,* 122 *N. J. L.* 283.

The inducement is the determinative. The test is whether the dominant causative motive is "of the sort which leads to testamentary disposition." It is not requisite that the donor be under a sense of imminent death. Rather, the question is whether "the thought of death is the impelling cause of the transfer." Is the "thought of death * * * a controlling motive prompting the disposition" of the property? It suffices if "contemplation" of death be the "inducing cause" of the gift, "whether or not death is believed to be near." *United States* v. *Wells, supra.* In this connection, it is to be noted that, by express legislative provision, a gift made within two years prior to the death of the donor shall, "in the absence of proof to the contrary," be deemed to have been made in contemplation of death. *R. S.* 1937, 54:34-1c.

The policy of this statute is to place testamentary gifts and substitutes therefor in the same succession tax category. The inquiry therefore is whether the gift was essentially testamentary in character. The legislative design was to include gifts "in contemplation of death" in "a single class with decedents' estates to secure equality of taxation, and prevent evasion of estate taxes." Was the gift "motivated by the same considerations as lead to testamentary dispositions of property, and made as substitutes for such dispositions without awaiting death, when transfers by will or inheritance become effective?" *Milliken* v. *United States, supra; Schweinler* v. *Thayer-Martin, supra.*

In the determination of the question, this court is under a duty to weigh the evidence and make its own independent factual findings. It has lately been held that, since the Pre-

rogative Court functions "as a special statutory tribunal" in the exercise of its statutory power of review, the Supreme Court on *certiorari* is invested, under *R. S.* 1937, 2:81-8, with authority to determine disputed questions of fact. *Scheider* v. *Martin*, 124 *N. J. L.* 567. See, also, *Perry* v. *Martin*, 124 *Id.* 213.

We therefore proceed to an analysis of the evidence. The donor died on April 25th, 1935, in his fifty-eighth year. The cause of death was coronary occlusion—a failure of heart function due to arterial and muscular degeneration. On March 9th, 1933, the testator and his wife executed concurrent or reciprocal wills, *i. e.*, each designated the other as the sole beneficiary. Shortly thereafter, on April 6th, 1933, the first of the series of *inter vivos* gifts was made. These gifts were made at the times and in the amounts following:

| Date of Transfer | Description of Property Transferred | Appraised Value as of Date of Transfer |
|---|---|---|
| April 6th, 1933 | Real Estate in Montclair | $10,000.00 |
| Aug. 2d, 1933 | Corporate Bonds | 38,657.50 |
| Sept. 6th, 1933 | Corporate Capital Stock | 14,550.00 |
| Oct. 20th, 1933 | Corporate Bonds | 4,640.00 |
| Nov. 3d, 1933 | Corporate Bond | 2,070.00 |
| Jan. 15th, 1935 | Corporate Bond | 5,200.00 |
| April 6th, 1935 | Corporate Bond | 2,145.00 |
| | Total | $77,262.50 |

Thus it is that all but the first of the gifts were made within two years prior to the donor's death; and, as to these, the burden rests upon the prosecutrix to prove that they were not made in contemplation of death. *R. S.* 1937, 54:34-1c. A gift made within that period is deemed to be a mere substitute for testamentary disposition, and therefore within the ambit of the statute, unless the contrary be proved. This burden has not been sustained.

It would seem that the generating thought in the making of these gifts was of death as distinguished from purposes

"associated with life," to use a phrase adopted in *United States* v. *Wells, supra.* It is reasonably inferable that they were the product of that "contemplation" which leads to testamentary disposition. The first followed the execution of the will by less than a month; and they were all made to the sole beneficiary designated therein. The estate acquired by the widow under that will amounted to about $146,000, and so the gifts constituted approximately one-third of the deceased's total estate. While his condition of health during the period covered by the gifts is not conclusive of this inquiry, it is a factor to be considered. He had been seriously ill for a long period, during which he underwent a major abdominal operation, and, though it is probable that his fear of mortal disease had been largely dissipated when the will and gifts were made, yet the inference is persistent that these acts were in execution of a plan to make a disposition of his property essentially testamentary in character. The gifts were merely in part fulfillment of the testamentary purpose expressed in the will lately made.

There is no other credible explanation consistent with the absence of the thought of death as the dominating influence. We find nothing in the case to demonstrate an intent thereby to render his wife financially independent. There is no discernable reason why he should have established his wife with a competency of her own during his life.

The widow maintains that two of the gifts—the real estate on April 6th, 1933, and the security of the value of $2,145 on April 6th, 1935—were wedding anniversary gifts. The deceased had on one other occasion so marked their wedding anniversary, and had also made birthday gifts to his wife, but there was no such custom—certainly not by gifts such as those under review; and, though he may also have had the anniversary in mind on the stated occasions, the succession of such gifts evidences a design instinct with the thought of death in the statutory sense.

But it is said that the gifts concededly not intended to observe an anniversary were designed "to make up the income" his wife "had lost" by reason of her contributions to her father in his lifetime, and later to his insolvent estate,

out of moneys he had given her in prosperous times. In view of the lapse of time (these contributions were made in 1928 and the latter part of 1930, or early in 1931), and the fact that the deceased's gifts were out of all proportion to the "lost income," the explanation is not convincing.

These are termed the "primary motives which induced the gifts." It is also asserted, "as contributing reasons," that the deceased "wanted his wife to become familiar with the management of property," and "to reduce his income tax liability," and "to put the property beyond the reach of possible future judgments against him." We find the evidence does not establish that any of these considerations motivated the transfers. The donee then had such business experience through the handling of the substantial gifts made by her father. While the reduction of income tax liability may have been within contemplation, that was plainly not the primary purpose of the gifts. And the size of the estate remaining, considered in the light of the proofs respecting his liability to judgments, renders wholly implausible the object last stated.

And so prosecutrix has not sustained the burden of establishing by evidence that the impelling motive for these transfers was disassociated from the "thought of death" and a purpose to dispose of his property in anticipation of that event— in other words, considerations associated with life.

It suffices to add that we are convinced that all these gifts were made in pursuance of a considered plan or purpose in nature testamentary, and therefore the first of the gifts is taxable with the rest.

The decree is accordingly affirmed, with costs.