**WEADOCK et al. v. KAVANAGH.**

No. 4192.

District Court, E. D. Michigan, S. D.

May 25, 1945.

Armstrong, Weadock, Essery & Helm, of Detroit, Mich., for plaintiff.

C. Dinu, Asst. Dist. Atty., of Detroit, Mich., and Samuel O. Clark, Jr., Asst. Atty. Gen., for defendant.

PICARD, District Judge.

Action brought for recovery of a portion of Federal estate taxes paid on behalf of Philip H. Grennan, deceased, estate. The question involved is whether certain property transferred by decedent in trust August 25th, 1931 was properly included as taxable under Section 302(c), Revenue Act 1926, as amended, 26 U.S.C.A. Int.Rev. Acts, page 227.

The facts are that Philip H. Grennan died September 4, 1936, having on August 25, 1931, placed certain assets valued the date of his death at $65,074.76 into a double trust—one for the benefit of his daughter, Evelyn, the other for his son Paul.

The wording of the trust is decisive of the questions involved. By its terms Evelyn was to receive $65 per month during · the donor's life, subject to the provision that donor could "during his lifetime give written instructions to the Trustees to increase the amount of said payments to his

daughter, or to decrease such payments, *or to make no payments of income to her but instead add the said income to the principal of her trust estate."* (Italics ours)

Paul was to receive the income from his half in monthly or quarterly installments subject to the provision that the Trustees should pay Paul as "the donor may in writing direct," adding any undistributed income from Paul's share to the principal of Paul's half.

Two other clauses materially affect the interpretations to be placed upon this trust and they are, first,

"Paragraph Six: If either or both of the Donor's children should predecease him, the Trustees shall terminate the trust estate of such deceased child or children forthwith, and assign and transfer said trust estate or estates to the Donor absolutely."

and

"Paragraph Six B: That if Paul Grennan should die leaving neither wife nor children, and if Evelyn Grennan should die without leaving issue, then the trust estate shall be terminated, and assigned and transferred absolutely and forthwith to the Donor's heirs-at-law."

It will be noted therefore—

(a) That right up to the date of his death donor could have withheld any money being paid to either Paul or Evelyn;

(b) That any income not distributed from either trust became part of the principal of that trust;

(c) That if either Evelyn or Paul died before the donor, her or his share reverted to donor; and

(d) That even after grantor's death, if Paul should die leaving no wife or issue and if Evelyn died leaving no issue, the principal as accumulated would be distributed to the heirs at law of the donor—not to the heirs at law of Evelyn or Paul.

## The Issue

The entire trust properties were included as part of the taxable gross estate of deceased, Philip H. Grennan, and plaintiff claims, first, that the Collector of Internal Revenue erred in including therein the value of the life estates of Evelyn and Paul Grennan; second, that the reversion taxable might possibly have included the undistributed income from the trust estate; and third, that no part of the value of the trust or trusts as of the date of death should have been included as taxable.

Plaintiff practically abandons his third point upon defendant's contention sustained by great weight of authority that the filing of a claim for refund setting forth the grounds relied upon is a necessary and indispensable prerequisite to maintenance of suit for recovery of federal taxes either against the United States or the Collector of Internal Revenue. Rev. St. § 3228, 26 U.S.C.A. Int.Rev.Code, § 3313; Kings County Savings Institution v. Blair, 116 U.S. 200, 6 S.Ct. 353, 29 L.Ed. 657; United States v. Felt and Tarrant Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025; Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253; Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L. Ed. 297; United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619.

Plaintiff in his claim as filed did contend that the only part of the trust includable was decedent's "reversionary interest" in the alleged amount of $15,466.64.

## Conclusions of Law

The statutes and regulations suggested as being involved are in the footnote.[1]

---

[1] Revenue Act of 1926, c. 27, 44 Stat. 9:

Sec. 302, as amended by Joint Resolution of March 3, 1931, c. 454, 46 Stat. 1516 and by Section 404 of the Revenue Act of 1934, c. 277, 48 Stat. 680:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States.

* * *

"Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That the first sentence of subdivision (c) of section 302 of the Revenue Act of 1926 is amended to read as follows:

"(c) To the extent of any interest therein of which the decedent has to any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the *possession* or enjoyment of, or the income from, the property or (2) the right to designate the persons who

Both sides rely on Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 450, 84 L.Ed. 604, 125 A.L.R. 1368, where the Supreme Court tried to settle once and for all the affect of remote control on gifts inter vivos and to determine whether future court decisions should be governed by the conveyancer's ability to manipulate the English language so as to squeeze his client's hidden intention behind flimsy phrases or to enunciate a broad principle of dealing with an abstract problem. As Justice Frankfurter said, if we are to depend upon the former:

"Such an essay in linquistic refinement would still further embarrass existing intricacies. It might demonstrate verbal ingenuity, but it could hardly strengthen the rational foundations of law. * * * There are great diversities among the several states as to the conveyancing significance of like grants; sometimes in the same state there are conflicting lines of decision, one series ignoring the other."

The Hallock case goes into the question fully, boldly facing the issue of whether the doctrine of stare decisis embodies an important social policy and determines that while it should not, on tenuous grounds, dissipate former decisions, the Supreme Court has never accepted the theory of "disability at self-correction." In the Hallock case the main question was—Should the court adhere to the rule of law laid down in Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239, and Becker v. St. Louis Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35—which incidentally Justice Roberts said in his dissenting opinion was not a legal innovation but had been the law since 1927—or should it follow Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 399, 75 L.Ed. 996, decided in 1931? In following the Klein decision the Supreme Court does theorize that where the fruit of any court's interpretation has not been secured by remedial legislation that court should not hesitate to make the correction itself in the light of past and anticipated events. It adheres therefore to the doctrine that where a transfer is made by decedent in his life time, "intended to take effect in possession or enjoyment at or after his death," he still maintaining a reversionary right in the event of donee's death, the gross estate should be taxed. This overrules the St. Louis Trust Company cases, which held that such a provision "was a mere possibility of a reverter" [296 U.S. 39, 56 S.Ct. 76], and property so slightly affected should not be included in the gross estate.

There is some maneuvering in Helvering v. Hallock as to whether the court should follow the Klein case and disown the St. Louis cases or whether they could be reconciled. Justices Roberts and McReynolds

---

shall possess or enjoy the property or the income therefore; except in case of bona fide sale for an adequate and full consideration in money or money's worth. (Italics ours)

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *"

Treasury Regulations 80 (1834 ed.):

"Art. 17. Transfers conditioned on survivorship—The expression, 'a transfer * * * intended to take affect in possession or enjoyment at or after his death', includes a transfer resulting from the execution of a written instrument. or the making of an oral arrangement, without an adequate and full consideration in money or money's worth, whereby title was not to pass from the decedent to the beneficiary (*or, if title passed it was to be defeated) unless he survived the decedent, and* should he not so survive, the property is to be restored to the decedent or become a part of his estate. The tax applies without regard to the time when the instrument was executed or the oral arrangement was made, whether before or after the enactment of the Revenue Act of 1916. Thus the gift of a life estate with provision made that upon the death of the life tenant the property is to be returned to the decedent, if then living, otherwise to pass to another, the value of the entire property (less the value at the decedent's death of the life estate, if such estate was then outstanding and had not been transferred by the decedent in contemplation of his death) constitutes a part of the gross estate. It is unimportant whether the decedent's interest be denominated a reversion or a possibility of reverter, and whether the interest of the remainderman is contingent or vested subject to be divested." (Italics ours)

held they could and should be reconciled. But in our opinion the effect of the Hallock decision is to overrule the St. Louis Trust cases. As stated by Justice Frankfurter they are "untenable because they drastically eat into the principle which those cases professed to accept and to which we adhere."

In short the court in the Hallock case adopted the views of the four dissenting Justices in the St. Louis Trust cases, supra, that such a reversional clause could "be resorted to, as a substitute for a will, in making dispositions of property operative at death" [309 U.S. 114, 60 S.Ct. 449], and such gifts inter vivos which Congress intended to include for tax purposes would be exempt.

Incidentally, the Supreme Court's decision in the Hallock case found reinforcement in Fidelity-Philadelphia Trust Co. v. Rothensies, 3 Cir., 142 F.2d 838, and its own action on the same case, 1945, 324 U.S. 108, 65 S.Ct. 508. See also Commissioner of Internal Revenue v. Field's Estate, 324 U.S. 113, 65 S.Ct. 511.

■■ Broadly speaking the distinction seems to be that whenever a settlor or testator by trust creates express conditions or contingencies upon the happening of which he might regain the corpus, such a gift is testamentary in character and intended to take effect in possession or enjoyment at or after his death. As the Court of Appeals in the Fidelity-Philadelphia Trust Company case said, "Since the disposition of the estate was held in suspense until her death, that event compels the imposition of the tax." [142 F.2d 841] And we so hold.

### Life Estate

Having disposed of this question we approach plaintiff's contention that the life estate existent after donor's death should not be included as part of the estate to be taxed to support which he emphasizes the distinctions between the case at bar and recent decisions by four notations:

First, in the Hallock case the life estate was a definite one and in computing the tax the court accepted the exemption merely taxing the balance of his estate as the reversionary interest of the donor;

Second, in the Klein case, which was supported by United States v. Hallock, there was no question about a "conditional" life estate; that also was definite;

Third, in the case at bar, there is a "conditional" life estate; that is, it remains conditional up to the death of the donor and from that day on there is no restraint upon the trustees. They must pay Evelyn the entire net income from her trust in quarterly or monthly installments and they must "make wise provision for the use and maintenance" of Paul out of the income from his half; and

Fourth, nothing the donor could have done during his life could have changed that part of the life estate given to those two children; that is as to their interests in the trust after his death.

■ But the objection is immediately met by the Commissioner v. Field case, supra, that there is always the "possibility" —we emphasize the word "possibility"— that neither Evelyn nor Paul will ever enjoy the life estate or any part of it since either or both may die before the donor has permitted them to receive a single cent from the trust.

The court in the Field case, supra, uses this illuminating language:

"Thus until decedent's death it was uncertain whether any of the corpus would pass to the beneficiaries or whether it would revert to the decedent. Decedent retaining a string attached to all the property until death severed it, the entire corpus was swept into the gross estate and was taxable accordingly. * * *

"It makes no difference how vested may be the remainder interests in the corpus or how remote or uncertain may be the decedent's reversionary interest. If the corpus does not shed the possibility of reversion until at or after the decedent's death the value of the entire corpus on the date of death is taxable." [324 U.S. 113, 65 S.Ct. 512.]

The Field case is very close to being on all fours with the case at bar on the facts, and since there was a "possibility" that the life estate might never come into existence we feel that we must hold with the defendant on all its claims.